NINA M. PASCALE, APPELLEE AND CROSS-APPELLANT, V. ALAN R.
PASCALE, APPELLANT AND CROSS-APPELLEE.

424 N.W.2d 890

Filed June 24, 1988.   No. 86-734.

Timothy J. Pugh, of Boland, Mullin & Walsh, for appellant.

Sally Millett Rau for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and RILEY and OTTE, D. JJ.

OTTE, D.J.

The facts are not in dispute. The marriage of Nina M. and Alan R. Pascale was dissolved on October 28, 1985, pursuant to the terms of a property settlement agreement. Both parties were represented by counsel. It appears the parties contemplated a 50-50 division of their property. The relevant portion of the property settlement agreement was the agreement by the parties that they would file joint federal and state income tax returns for 1985, with the further agreement that the respondent would be solely entitled to any tax refund and be solely obligated for any tax liability.

Pursuant to the terms of the agreement, each party received shares of common stock of Hershey Foods Corporation. The problem arose in November 1985, when the petitioner sold her shares of Hershey stock, triggering a capital gains tax liability, and thereby increasing the parties' tax liabilities in the sum of $26,672, all of which the respondent was obligated to pay as a

result of the property agreement. Respondent filed an application to modify the decree, the statutory 6-month waiting period having expired. The Douglas County District Court ordered the petitioner to pay $7,974.50 for the use and benefit of the respondent in paying the additional tax resulting from the sale of the stock. The respondent filed this appeal, and the petitioner filed a cross-appeal. We reverse and dismiss.

It is the duty of this court to review de novo the determination of the district court with regard to whether a change in circumstances has occurred which justified modification of the original decree. *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983). The change must be a change not within the reasonable contemplation of the parties. *Albers v. Albers, supra.*

It can hardly be said that the immediate sale of the property received in settlement was not within the reasonable contemplation of the parties. In reviewing the record, it is obvious that the respondent knew the tax consequences relating to all of the financial dealings of the parties. The settlement agreement allowed respondent $10,723 to be used for any tax liability as a result of the joint filing. The respondent regularly prepared the parties' income tax returns and furnished, for the most part, all of the figures upon which the settlement agreement was based. The joint tax liability of the parties would have been $21,934 had the petitioner not sold her stock in 1985. Respondent's responses to interrogatories shows a total federal tax withholding from his 1985 salary of $29,950.96 and he, therefore, was anticipating a federal tax refund of roughly $8,000. In spite of that, he insisted upon an additional credit in the settlement agreement of $10,723 for estimated additional tax liability. Assuming that credit was attributed one-half to each, the respondent expected a windfall of approximately $13,000 as a result of his agreement to pay the tax deficiency or keep the refund. It really appears as if the respondent spent so much time figuring out how to obtain an advantageous tax position that he neglected to consider the consequences of a sale of the stock. It cannot be said that the respondent should not have reasonably contemplated a sale of the stock by the petitioner and the resulting tax consequences; he thought of

everything else. It is interesting to note that respondent's employer withheld in excess of $10,000 more from his 1985 payroll checks than was withheld in 1984, even though his salary increase was only $5,250. It might further be noted that the respondent gave to the petitioner the shares of stock with the lowest basis, which could only have resulted in a higher capital gain to her if she sold anytime after January 1, 1986. While, as respondent argues, the total difference in the basis of the various shares held by the parties was only about $500, that just further shows the meticulous manner in which the respondent treated his financial affairs. Certainly, the respondent could have insisted in the agreement that the shares not be sold during the year in which he voluntarily assumed the tax obligations of the parties.

The decree in this case involved a property settlement agreement. It was not a division of property by the court, but only the consent by the court to the entry of a decree pursuant to the agreement of the parties upon a finding that such agreement was not unconscionable. The court has consistently held that where a party to a divorce action, represented by counsel, voluntarily executes a property settlement agreement which is approved by the court and incorporated into a divorce decree from which no appeal is taken, ordinarily the decree will not thereafter be vacated or modified as to such property provisions, in the absence of fraud or gross inequity. *Colson v. Colson*, 215 Neb. 452, 339 N.W.2d 280 (1983); *Klabunde v. Klabunde*, 194 Neb. 681, 234 N.W.2d 837 (1975). There is no evidence of fraud on the part of the petitioner, and neither can it be said that the ultimate result in this case was grossly inequitable.

The judgment of the district court is reversed. The application of the respondent is dismissed and the clerk of the court directed to return to the petitioner the $7,974.50 paid by her into court. No attorney fees are awarded for services in this court.

REVERSED AND DISMISSED.