PATRICIA MARIE ROBBINS, APPELLEE, V. CRAIG MITCHELL ROBBINS, APPELLANT.

536 N.W.2d 77

Filed August 22, 1995.   No. A-94-194.

Jeffrey L. Hansen, of Simmons, Olsen, Ediger & Selzer, P.C., for appellant.

James L. Zimmerman, of Sorensen & Zimmerman, and, on brief, G. Kirk Meade, of Nichols, Douglas, Kelly and Meade, P.C., for appellee.

SIEVERS, Chief Judge, and IRWIN and MUES, Judges.

MUES, Judge.

Craig Mitchell Robbins appeals from an order of the district court for Scotts Bluff County which modified the decree dissolving his marriage to Patricia Marie Robbins by reducing his child-support obligation and by requiring him to pay a portion of child-care expenses. The district court declined to modify a property settlement agreement and to retroactively apply the reduced amount of child support. The district court also found Craig in willful contempt for failing to maintain health insurance for his children. For the following reasons, we affirm.

## FACTUAL BACKGROUND

The marriage of Craig and Patricia was dissolved on June 8, 1992. Prior to the hearing, the parties entered into a "Property Settlement and Custody Agreement" (Agreement) on May 27, 1992, regarding various matters, including child custody, child support, division of property, and debt allocation. Craig was not represented by legal counsel in the divorce action. The court approved the Agreement and, pursuant to it, awarded custody of the parties' two minor children, Melissa Brooke, born August 9, 1984, and Christopher Anthony, born October 4, 1987, to Patricia and ordered Craig to pay $850 per month total child support. Craig was also ordered to maintain health insurance for the children and to pay all uncovered medical, dental, and vision care expenses, including deductibles. In accordance with their Agreement, the court awarded Craig sole interest in the parties' Domino's Pizza business, subject to any and all encumbrances. In lieu of an interest in the business, Patricia was awarded a money judgment in the amount of $20,000. Additional personal property and marital debts were allocated between the parties pursuant to their Agreement and are not at issue on this appeal.

Craig filed an application for modification of decree on April 8, 1993, and amended the application on September 14. Craig sought, in relevant part, a reduction in child support, due to a substantial reduction in his income, and a modification of the decree's award to Patricia of a $20,000 money judgment because tax liability incurred on the sale of the pizza business

had reduced the net property awarded to him.

In response to the original application for modification, Patricia alleged that Craig's reduction in income was the result of "voluntary impoverishment" and that Craig had failed to pay the children's medical expenses. In addition, Patricia sought to modify the decree to award her child-care expenses. Patricia's demurrer to that portion of the amended application regarding modification of the property agreement was overruled by the court.

The record reflects that an "Amended Motion for Citation of Contempt" was filed on December 17, 1993, alleging that Craig failed to pay federal and/or state income taxes for 1991 and 1992, resulting in the seizure of Patricia's $588 income tax refund in June 1993, and that Craig failed to pay certain medical expenses for the children.

At the hearing held January 20, 1994, Patricia conceded that there had been a material change in circumstances with regard to Craig's income, requiring a reduction in his child support obligation. The parties' testimony indicates that Patricia's gross income is $1,800 per month and Craig's is $350 per week. Craig testified that he also receives free food and beverages from his current place of employment at any time, such that his "food bill [is] almost nonexistent."

In his order, the trial judge attributed monthly income to Craig of $150, representing the value of the food and beverage items he receives from his place of employment. Based on net monthly income figures of $1,462 and $997 for Patricia and Craig, respectively, the trial court determined that Patricia's child support contribution is 59 percent, or $418 per month, and Craig's is 41 percent, or $288 per month. Accordingly, the trial court reduced Craig's child support obligation to $288, but denied his request for retroactive relief. The calculations themselves are not contested on appeal. The court also ordered Craig to contribute 41 percent of the child-care expenses, currently $144 per month. The court declined to modify the $20,000 money judgment awarded to Patricia in the property settlement agreement.

At the hearing, Craig testified that he had paid all but one of the children's medical bills in full a few days before trial.

However, evidence adduced at the hearing reflected that health insurance coverage for the children had lapsed on September 13, 1993. Craig admitted that he had not paid the premium for several months, but was unaware that the policy had actually lapsed. The district court found Craig in willful contempt for failing to maintain health insurance coverage for the children, but allowed him to purge himself by immediate reinstatement of the coverage.

## ASSIGNMENTS OF ERROR

Craig alleges the district court erred in (1) attributing additional monthly income to him of $150, representing food and beverage items he receives from his place of employment; (2) modifying the dissolution decree to require him to pay 41 percent of the child-care expenses; (3) failing to apply the reduced child support obligation retroactively to the date of filing; (4) failing to modify the property settlement; and (5) finding him in willful contempt for failing to provide health insurance for the minor children.

## STANDARD OF REVIEW

Appellate review of a judgment concerning modification of a marital dissolution decree is de novo on the record to determine whether the trial court abused its discretion concerning the modification. *Schmale v. Schmale*, 240 Neb. 499, 482 N.W.2d 268 (1992). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993).

Where the evidence is in conflict on a material issue of fact, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Sabatka, supra*; *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994).

## ANALYSIS
*Attribution of Additional Income.*

Craig argues that the trial court erred in attributing to him monthly income of $150 representing the food and beverage items he receives from his place of employment. In response to a question from his attorney regarding bonuses he receives from his employment, Craig testified that he does not receive cash, but he does receive food and beverages. On cross-examination, Craig testified that he receives free food while at his place of employment and also is able to bring food home, but does not keep track of the amount. Although he was unable to state the amount of food he receives from his place of employment, he did testify that he takes food home "[a]ll the time," that he feeds both himself and his girl friend with food from his place of employment, that he was "actually getting [his] girlfriend sick of Italian food," and that his "food bill [is] almost nonexistent."

The Nebraska Child Support Guidelines clearly define "total monthly income" as "income of both parties derived from all sources." Paragraph D. However, Nebraska law is equally clear that findings regarding an employee's level of income should not be based on the inclusion of income that is entirely speculative in nature and over which the employee has little or no control. *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991).

Craig argues that the meal benefit he receives is comparable to such employee benefits as health insurance or a company car. He contends that these benefits are "not assigned a value and included as income to the child support obligor for purposes of calculating child support." Brief for appellant at 13. However, he provides no authority for this assertion. We observe that the guidelines allow a specific deduction for insurance in determining net income, and therefore, it is reasonable to conclude that the value of employer-provided insurance would not be attributed as income. However, we find no authority to suggest that the value of an automobile, or as in this case, food and beverage items, provided by an employer would not be an appropriate consideration in determining net income or in otherwise deviating from the guidelines in calculating child

support.

Although we find it troublesome that there was no testimony as to the precise value of the food and beverage items Craig received from his place of employment each month, the amount attributed to his monthly income is minuscule in light of his testimony that his monthly food budget is all but supplanted by the meals he receives from his place of employment. We find no abuse of discretion in the trial court's attribution of $150 in monthly income to Craig for purposes of calculating child support.

*Child-Care Expenses.*

Craig next argues that the trial court erred in requiring him to pay 41 percent of the child-care expenses, as the Agreement the parties entered into was silent on that issue, despite the fact that such expenses were contemplated at the time of the decree.

Patricia testified that at the time of the divorce she was a full-time student, was intending to continue her education, and did not require child-care services. While she was in school, her mother lived with them and cared for the children. However, on cross-examination, Patricia testified that at the time of the divorce, she had a feeling that she would incur some child-care costs "down the road." Some months after the divorce, Patricia obtained full-time employment and now incurs $350 per month in child-care expenses for the two children. While we recognize that Patricia may have contemplated that she would incur child-care expenses at some point in the future, many items within the realm of contemplation at the time of dissolution remain uncertain or speculative. Such changes are not *reasonably* contemplated and are not appropriately considered until actual occurrence. A change of circumstances not within the *reasonable* contemplation of the parties at the time of the decree may be the basis for modification of a decree. See *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983). That Patricia anticipated child-care costs at some time in the future when the decree was entered does not prohibit the award of such expenses under these circumstances. Under the guidelines, child-care expenses, while often considered along with child support in calculating the overall support obligation, see *Hamm v.*

*Hamm*, 228 Neb. 294, 422 N.W.2d 336 (1988), "are not specifically computed into the guidelines amount and are to be considered independently of any amount computed by use of these guidelines," Nebraska Child Support Guidelines, paragraph N. The district court found that Craig's income represented 41 percent of the parties' total income and based upon that figure ordered Craig to contribute 41 percent of the child-care expenses, currently $144 per month. We find no abuse of discretion in the district court's award.

*Retroactivity of Child Support Obligation.*

Craig also contends the district court erred in failing to apply the decrease in the amount of child support retroactively to the date of filing his application for modification. In the initial decree, Craig was ordered to pay $850 per month for the support of his children. After the modification hearing, the court reduced Craig's child support obligation to $288 per month. This amount is not in dispute on this appeal.

The general rule in Nebraska has been to allow a modification of a child support order prospectively from the time of the modification order itself. *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991). When a divorce decree provides for the payment of stipulated sums monthly for the support of a minor child or children, contingent only upon a subsequent order of the court, such payments become vested in the payee as they accrue. Generally, the courts are without authority to reduce the amounts of such accrued payments. *Id.* The *Maddux* court, although rejecting retroactive modification under the circumstances of that case where the father entered court with "unclean hands," recognized that in certain circumstances, depending upon the equities involved, the Nebraska Supreme Court has approved modification of a child support order retroactive to the filing date of the application for modification. See *Maddux, supra* (citing *Goodman v. Goodman*, 173 Neb. 330, 113 N.W.2d 202 (1962) (accrued child support payments after date of filing canceled where mother deliberately removed children from state for purpose of keeping them away from father); *Smith v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978); *Williams v. Williams*, 206 Neb. 630,

294 N.W.2d 357 (1980) (doctrine of equitable estoppel held applicable to defeat claims for accrued child support payments where natural father reasonably believes that adoption of child has been completed); *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991) (credit allowed for amounts due for support of a child for a period of time in which the child resided with the noncustodial parent); and *Contra Costa Cty. ex rel. Petersen v. Petersen*, 234 Neb. 418, 451 N.W.2d 390 (1990) (respondent credited for monthly payments made directly to the custodial parent by respondent's parents)). See, also, *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993) (Supreme Court held no abuse of discretion by district court in ordering father to pay child support retroactive to date of filing). However, we observe that in none of the above-cited cases did the Supreme Court reverse the district court's decision to deny retroactive modification. Nor have we found any cases factually similar in that a noncustodial parent is seeking to recover a "refund" on support amounts already paid.

Craig has remained current on his child support obligation, despite the substantial reduction in his income. He has not kept current on the children's medical bills and has allowed their health insurance coverage to lapse, but it would seem those transgressions, although serious, are slight given the dramatic decrease in his income. At the same time, Patricia has done nothing to prevent Craig's visitation with the children, has demonstrated no bad faith in the parties' interactions, and has not unnecessarily delayed the modification proceedings.

No specific explanation was provided by the district court in denying Craig's request to reduce his child support obligation retroactively. Perhaps the court found that Craig's "hands" were not entirely "clean" due to his failure to remain current on the medical bills and maintain health insurance for the children. Perhaps the court placed significance on the fact that Patricia has not acted in bad faith and that a credit against future support would be unduly burdensome. Perhaps the court questioned the involuntariness of Craig's significant reduction in income. While the district court may have had the authority to reduce Craig's child support obligation retroactively and while this court might have fashioned a different result on the

issue if presented with it initially, that is not the standard of our review. As we have previously stated, our review concerning modification of a decree is to determine whether the trial court abused its discretion concerning the modifications, i.e., whether the district court's decision is untenable and unfairly deprives a litigant of a substantial right or a just result. See, *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *Wulff, supra*. Given the Supreme Court's teachings on the latitude to be afforded a district court's discretion, see *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994), and *Eberspacher v. Hulme*, 248 Neb. 202, 533 N.W.2d 103 (1995), we cannot say that the district court abused its discretion under the circumstances of this case, and therefore, we decline to reverse on this issue.

*Property Settlement.*

Craig seeks to modify the $20,000 money judgment awarded to Patricia. This amount, pursuant to the terms of the Agreement, was to be paid in lieu of her interest in the Domino's Pizza business. Craig argues that the amount of the money judgment should be reduced because he claims a $37,000 tax liability relating to the sale of the business was not contemplated at the time of the decree and substantially affects the amount of proceeds from the sale. Craig contends that considering this tax liability, Patricia's 50-percent share of the proceeds should have been only $4,000. The district court declined to modify the property settlement.

The parties purchased the Domino's Pizza business in January 1990 for $28,000. Craig operated the business as a sole proprietorship. Patricia did not work for the business and had essentially no knowledge regarding its operations. The specific terms of the sale and the assets and debits of the business were never discussed with Patricia's attorney, and Craig failed to respond to interrogatories containing such questions. The only recommendation made by Patricia's attorney on this issue was to split the proceeds from the sale equally. Craig testified that he and Patricia determined her share of the proceeds to be $20,000 after discussing the sale price of the business and estimating the debt owed by the business. Patricia testified that Craig simply

told her that $20,000 "would be half." The $20,000 amount of the money judgment was presented to Patricia's attorney as the amount the parties believed to be a fair division of the proceeds, and it was thereafter incorporated into their Agreement.

The decree was entered on June 8, 1992. The business was sold on July 1 for $115,000. Craig paid Patricia the $20,000 judgment from the proceeds. Craig testified that the debts of the business totaled $50,000. Therefore, the record suggests that Craig received a pretax net of $45,000 from the sale of the business, despite his testimony that he only received $27,000.

Craig claims that at the time the amount of the money judgment was determined, he was not aware of the substantial tax consequences related to the sale of the business, and maintains that he first learned of the tax liability in late 1992 or early 1993. However, the testimony reflects that during the relevant period of time in which the settlement negotiations and divorce proceedings were held, Craig regularly saw his accountant, according to his own testimony, two to three times a week. The accountant, Dana Weber, prepared Craig's tax returns and also performed monthly bookkeeping and payroll duties for the business. Weber admitted that he knew Craig was selling the business, and Weber was certain that at some point he discussed with Craig the capital gains consequences relating to the sale, but could not recall if that discussion was before or after the sale of the business. Craig testified that he did not "recall" discussing the sale of the business and its tax consequences during the time in which the divorce was pending.

Weber testified that the total tax liability specifically relating to the sale of the business was $34,010, $27,572 of which consisted of federal taxes and $6,438 of which was state taxes. Weber further testified that the precise dollar amount of Craig's tax liability was not discussed until approximately April 1993 and that discussions prior to that time were general in nature.

Craig contends that the money judgment should be modified because Patricia obtained an unconscionable advantage due to his ignorance concerning the tax consequences of the sale of the business. Where a party to a divorce action, represented by counsel, voluntarily executes a property settlement agreement which is approved by the court

and incorporated into a divorce decree from which no appeal is taken, ordinarily the decree will not thereafter be vacated or modified as to such property provisions in the absence of fraud or gross inequity. *Pascale v. Pascale*, 229 Neb. 49, 424 N.W.2d 890 (1988); *Klabunde v. Klabunde*, 194 Neb. 681, 234 N.W.2d 837 (1975). Here, Craig was not formally represented by counsel at the time of the execution of the property settlement agreement or its approval by the district court. Particularly under those circumstances, the trial court has an affirmative duty to scrutinize the transaction and see to it that " 'no unconscionable advantage is taken through fraud or intimidation, or even by reason of ignorance, passion or improvidence.' " *Pittman v. Pittman*, 148 Neb. 864, 872, 29 N.W.2d 790, 795 (1947).

Craig asserts that the Agreement does not address the issue of tax liability related to the sale of the business because it was not contemplated by either party at the time the Agreement was entered. In *Pascale, supra,* the Supreme Court reversed the district court's modification of a property settlement agreement. In that case, the husband and wife entered into a property settlement agreement and divided certain shares of stock. Pursuant to the terms of the agreement, the parties would file joint income tax returns, and the husband would be solely entitled to any tax refund and obligated for any tax liability. The dispute arose when the wife immediately sold her shares of stock, thereby increasing the parties' tax liabilities in the sum of $26,672, all of which the husband was obligated to pay under the terms of the agreement. The husband filed an application to modify the decree outside the 6-month waiting period, and the district court ordered the wife to pay the husband $7,974.50 toward the additional tax resulting from the sale of the stock. In reversing the district court's order, the Supreme Court recognized that modification of the original decree required a change in circumstances that was "not within the reasonable contemplation of the parties." *Id*. at 50, 424 N.W.2d at 891 (citing *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983)). The Supreme Court found there had been no such change in circumstances because the husband knew the tax consequences generally relating to the financial dealings of

the parties, the agreement allowed a certain amount of money to be used for tax liability, and the husband regularly prepared the parties' income tax returns. The court observed that the husband "could have insisted in the agreement that the shares not be sold during the year in which he voluntarily assumed the tax obligations of the parties." *Pascale*, 229 Neb. at 51, 424 N.W.2d at 891. Finding that the sale of the stock was within the reasonable contemplation of the parties, that there was no fraud on the part of the wife, and that the ultimate result was not grossly inequitable, the Supreme Court reversed the district court's judgment and ordered that the husband was solely responsible for the tax consequences. See, also, *Klabunde, supra* (Supreme Court found no abuse of discretion in district court's refusal to vacate decree within 6-month waiting period where property division was approximately equal).

Similarly, in the present action, while the Agreement does not specifically mention tax liability, it does provide that Craig received the business "subject to any and all encumbrances." Moreover, Craig is the party with intimate knowledge of the business operations, and he is the one who was in regular contact with the accountant. The sale had been discussed and contemplated by Craig for about a year before it actually occurred. The Agreement did not require Craig to sell the business. While the trial court made no specific findings in this regard, we cannot say it was an abuse of discretion to conclude that the tax aspects of the sale of the business were reasonably contemplated at the time of the agreement.

Craig relies on *Pittman, supra*, to argue that the money judgment should be modified because the tax consequences were not considered due to his ignorance and his failure to seek the advice of counsel or an accountant. In *Pittman*, the Supreme Court found that the district court abused its discretion in failing to vacate the property settlement agreement where the wife had obtained an unconscionable advantage due to the husband's ignorance. In that case, as here, the husband was not represented by counsel. However, in *Pittman*, the motion to vacate was filed within the 6-month waiting period, and the record was clear that the wife had received substantially all the property plus $50 per month in alimony from the

husband's $200-per-month salary, some parts of which settlement were induced by the urging of the wife's attorney, contrary to the husband's desires.

While, under *Pittman*, we must consider the fact that Craig was not formally represented by counsel during the divorce proceedings, that does not mean that the Agreement is automatically invalid. We simply must carefully scrutinize the transaction to see that " 'no unconscionable advantage [wa]s taken through fraud or intimidation, or even by reason of ignorance, passion or improvidence.' " *Pittman*, 148 Neb. at 872, 29 N.W.2d at 795. Craig has completed his high school education and approximately 1¹/₂ years of college. He owned his own business for approximately 2¹/₂ years. Although Craig testified that he has never been required to pay a capital gains tax before, the district court was not required to accept that a person of Craig's education and business acumen was entirely ignorant of the fact that tax implications might accrue upon selling an asset for $87,000 more than he paid for it. Neither are we.

There is absolutely no evidence of fraud on the part of Patricia or her attorney, and Craig does not contend otherwise. Moreover, upon our review of the record, we find no evidence that Patricia or her attorney took any unconscionable advantage of Craig. To the contrary, if we accept Craig's testimony of total ignorance of tax consequences, he is the one who *attempted* an unfair advantage over Patricia. The evidence is sufficient to conclude that without consideration of taxes, the sale netted proceeds of $65,000 ($115,000 less $50,000). Patricia agreed, at Craig's behest, to accept only $20,000, leaving Craig with $45,000, certainly not the equal "split" that Patricia's attorney recommended. The bottom line is that had the tax liability been taken into account, half of the posttax proceeds would have been $15,500 (($65,000 less $34,000) divided by 2), not the $4,000 asserted by Craig.

We cannot say that the ultimate result in this case was grossly inequitable. The district court did not abuse its discretion in refusing to modify the money judgment portion of the property settlement.

*Willful Contempt.*

Patricia filed an "Amended Motion for Citation of Contempt" on December 17, 1993, based upon Craig's failure to reimburse her for an income tax refund withheld by the IRS and his failure to pay certain medical expenses for the children. With regard to Craig's failure to pay medical expenses, Patricia's motion specifically alleges that

> pursuant to the Decree, [Craig] was obligated to pay all medical expenses for the minor children and to maintain health coverage for the children. That [Patricia] has sustained significant medical expenses for the minor children, that the billings for all such expenses have been presented to Respondent but that [Craig] has either failed to submit such changes to his insurance company, or in the event that he no longer maintains such insurance or such charges are not covered by insurance, [Craig] has failed and refused to pay such charges.

In its order filed January 25, 1994, the district court found Craig "guilty of willful contempt for failure to maintain health insurance coverage on the minor children. [Craig] may purge himself by immediate reinstatement of health insurance coverage on the minor children."

Craig argues the district court erred in finding him in contempt of court because the "amended" motion was filed without an original motion, no affidavit was filed with the motion, and he never received a copy of the pleadings or the affidavit. He also contends that the bases specifically asserted in the motion did not concern his failure to maintain insurance on the children, and thus, it was an improper basis for the contempt order.

As to the procedural grounds for Craig's contentions, we observe, first, that no objections were made at or before the hearing to the filing of the "amended" motion, the lack of an affidavit, or his failure to receive a copy of the pleadings. Rather, Craig appeared generally, and not specially, at the court hearing with counsel, and no objections to any of these "problems" were made. The motion contains a certificate of service indicating that Craig's counsel received a copy of the motion. That certificate is not challenged. As to Craig's

contention that the language of the motion was inadequate to forewarn him that failure to maintain health insurance on the children would be part and parcel of the issues in the contempt proceeding, we simply refer the reader back to the quoted portion above and conclude that such argument strains credibility.

More importantly, in the absence of a final judgment or final order in the court from which an appeal is taken, an appellate court acquires no jurisdiction. *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993); *Schaad v. Simms*, 240 Neb. 758, 484 N.W.2d 474 (1992). A final judgment or order determines a substantial right of a party to an action. *Dunning, supra*. A civil contempt order is intended to compel a party to do some act for the benefit of another party to the action. *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980). "When a coercive sanction is imposed, 'the contemner holds the keys to his jail cell, in that the sentence is conditioned upon his continued noncompliance.' " *Maddux v. Maddux*, 239 Neb. 239, 241, 475 N.W.2d 524, 528 (1991) (quoting *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984)). An order imposing a coercive sanction in a civil contempt proceeding is not a final order because the coercive order is "always subject to modification by the contemner's conduct." *In re Contempt of Liles*, 216 Neb. at 534, 344 N.W.2d at 628.

The district court's order places Craig in a position to mitigate any penalty by reinstating health insurance for his children. As such, Craig "holds the keys to his jail cell." See *Maddux, supra*. This court, therefore, lacks jurisdiction to review the civil contempt order.

## CONCLUSION

We have reviewed the record de novo and find no abuse of discretion in the decision of the district court. We therefore affirm its order in all respects.

AFFIRMED.