DALE E. GRUBER, APPELLANT, V. DONA M. GRUBER, APPELLEE.

626 N.W. 2d 582

Filed June 1, 2001.  No. S-00-269.

Thomas P. Strigenz for appellant.

Tim B. Streff, of Govier, Milone & Streff, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Dale E. Gruber appeals from an order of the district court for Douglas County granting the application of Dona M. Gruber, now known as Dona M. Witters, to modify a 1995 decree dissolving their marriage and dividing the marital property. The district court determined that in order to avoid a gross inequity, it was necessary to modify the decree to provide for the division of Gruber's pension as originally agreed by the parties. Finding no abuse of discretion, we affirm.

## FACTS

The marriage of Gruber and Witters was dissolved pursuant to a decree of dissolution on August 3, 1995. The decree divided marital property pursuant to the terms of a settlement agreement negotiated by both parties and their respective counsel. The decree provision at issue provided:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the retirement plan at the City of Omaha Firefighters in the approximate sum of $58,138.02 in the name of [Gruber] shall be equally divided between [Gruber] and [Witters] as of the 20th day of July, 1995 and that said division shall [be] done by a Qualified Domestic Order.

The referenced qualified domestic relations order (QDRO) was entered by the court on the same day and provided for an equal division of Gruber's pension as of July 20, 1995.

Subsequent to the entry of the decree and the QDRO specified therein, Witters learned that the board of trustees of the "City of Omaha Police and Fire Retirement System" would not recognize the QDRO and refused to divide Gruber's pension as required by the decree. After adding Omaha's police and fire retirement system as a party to the divorce action pursuant to an agreement of the parties, Witters filed an "Application for Order" on January 29, 1997. This application sought an order requiring the board of

trustees to implement division of Gruber's pension in accordance with the decree and the QDRO. In an order dated June 20, 1997, the district court determined that it did not have jurisdiction to grant such relief in the context of a dissolution proceeding and dismissed the application with prejudice.

Thereafter, on May 28, 1999, Witters filed an application for modification of decree. An evidentiary hearing on the application was held on January 28, 2000. Paul Murphy, the benefits manager for Omaha's police and fire retirement system, testified on behalf of Witters. According to Murphy, the city of Omaha does not accept QDRO's because it is a governmental entity exempt from the provision of the Employee Retirement Income Security Act of 1974. Murphy testified that because the city had been presented with numerous QDRO's attempting to divide pensions, its law department developed language for incorporation into dissolution decrees in order to accomplish a division of city pension benefits between the parties to a dissolution proceeding. This occurred subsequent to the entry of the original decree in this case. Murphy testified that the only means to ensure that Witters received her share of the pension as set forth in the decree would be to incorporate the language developed by the city into the decree. He testified that a supplement to the decree, exhibit 4, contained the necessary language authorizing the city to award Witters the pension benefits as delineated in the decree.

On cross-examination, Murphy testified that the city's law department received numerous calls from attorneys seeking advice on the proper treatment of pension benefits in divorce decrees prior to the development of the language. He admitted that it was possible the board of trustees could in the future decide to honor QDRO's, as they were not legally prevented from doing so, but indicated that such a change was unlikely.

Witters testified that when she agreed to the property settlement, it was her understanding that she would receive one-half of the amounts Gruber had contributed to his pension at that time and that she would not have agreed to the settlement without this provision. She testified that she bargained for the pension to be equally divided as of July 20, 1995, and that she did not learn of the possibility that she could receive none of the pension moneys

until after the decree was entered. On cross-examination, she stated that she understood she would receive one-half of the pension contributions made as of the date of dissolution, plus interest. She admitted that the decree provided that this would be accomplished through a QDRO. She further admitted that she specifically informed the judge at the time the property settlement was entered into that she accepted the agreement.

Gruber testified that he is currently a fire captain for the city of Omaha. Gruber stated that at the time of the settlement negotiations, he offered to pay Witters one-half of the value of the pension in a lump sum, but she declined because she wanted her one-half interest to remain in the pension system. Gruber testified that it was his intention to have the decree divide the pension so that he would have one-half of the contributions in his name in the pension system and she would have one-half of the contributions in her name in the system. He further stated that he now wants "what's fair" and that he did not agree at the time of the decree that Witters should receive none of the pension moneys. On cross-examination, he again stated the decree was their understanding of the agreement and that Witters wanted to become a member of the pension system through the QDRO.

After taking the matter under advisement, the district court entered an order granting Witters' application to modify on February 9, 2000. The district court found that as part of their property settlement in 1995, the parties agreed that Witters was to receive one-half of Gruber's pension as of July 20, 1995. It further found that Witters would receive no part of the pension unless the decree was modified. The court reasoned that to deny Witters her one-half interest in the pension because the retirement plan would not accept a QDRO would be grossly unfair and accordingly granted the application to modify. On March 2, the district court entered a supplement to the decree of dissolution based upon the language developed by the city of Omaha, which provided for the one-half division of Gruber's pension benefits as of July 20, 1995. Gruber filed this timely appeal.

## ASSIGNMENTS OF ERROR

Gruber assigns, restated, that the trial court erred (1) in not applying the doctrine of res judicata, (2) in finding a material

change in circumstances not within the reasonable contemplation of the parties at the time of the decree, and (3) in modifying the decree based on a finding of gross inequity.

## STANDARD OF REVIEW

■ The applicability of res judicata presents a question of law, requiring an appellate court to reach a conclusion independent of that of the lower court. *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999).

■ Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Reinsch v. Reinsch*, 259 Neb. 564, 611 N.W.2d 86 (2000).

## ANALYSIS

### RES JUDICATA

Gruber first argues that the district court erred in not finding that Witters' application for modification was barred by the doctrine of res judicata. He contends that the court's ruling on her 1997 application for an order directing the board of trustees to comply with the decree precludes the present action.

■ Under the traditional rule of res judicata, sometimes called claim preclusion, any rights, facts, or matter in issue directly adjudicated or necessarily involved in the determination of an action before a competent court in which a judgment or decree is rendered *upon the merits* is conclusively settled by the judgment therein and cannot again be litigated by the parties and privies. *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998). In its June 20, 1997, order resolving Witters' application for an order directed to the board of trustees, the district court held that it had no jurisdiction to enter such an order in the context of a divorce proceeding. Because this was not a resolution on the merits, the doctrine of res judicata does not apply.

### MODIFICATION OF PROPERTY SETTLEMENT

■ It is undisputed that the division of Gruber's pension set forth in the decree was the result of a property settlement agreement entered into by the parties. Where parties to a divorce

action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, provisions dealing with division of pension benefits will not thereafter be vacated or modified in the absence of fraud or gross inequity. *Reinsch v. Reinsch, supra.* See, *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998); *Pascale v. Pascale*, 229 Neb. 49, 424 N.W.2d 890 (1988). The issue presented is therefore whether either fraud or gross inequity is present in the instant case so as to justify modification of the decree. Because there is no allegation of fraud, we limit our review to whether the district court abused its discretion in determining that failure to modify the decree would result in gross inequity.

Gruber argues there is no gross inequity present for two reasons. First, he contends that it was "well within the power of [Witters] to create the necessary language in the consent decree of 1995." Brief for appellant at 15. The record reveals, and the district court found, that the language drafted by the city of Omaha to assist attorneys in dividing pensions in divorce decrees did not exist in 1995. Nevertheless, Gruber argues that Witters could have contacted the city for assistance in drafting the agreement.

In support of this argument, Gruber cites *Pascale v. Pascale, supra*, and *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995). In *Pascale*, a dissolution decree divided the property of the parties pursuant to the terms of a settlement agreement. The relevant portion of the agreement provided that although the parties would file joint tax returns for the year 1985, the husband alone would be entitled to any tax refund for that year or obligated for any tax liability. When the wife sold shares of stock awarded to her in the decree, resulting in an increase of approximately $26,000 in tax liability, the husband filed an application to modify, contending her action in selling the stock justified the modification. We determined that it was obvious from the record that the husband knew the tax consequences relating to all of the financial dealings of the parties at the time of the decree. We noted that the husband regularly prepared the parties' tax returns and that the husband furnished the figures upon which the settlement agreement was based. We therefore

held that it "cannot be said that the respondent should not have reasonably contemplated a sale of the stock by the petitioner and the resulting tax consequences." *Id.* at 50, 424 N.W.2d at 891. We then found that because the parties voluntarily entered into the agreement, it could be vacated or modified only in circumstances of fraud or gross inequity. Finding that there was no evidence of either in the record, we reversed the district court's modification order.

In *Robbins v. Robbins, supra,* the parties voluntarily entered into a property settlement agreement awarding the wife $20,000 in lieu of her interest in the husband's pizza business. When the husband subsequently sold the business and incurred a substantial tax liability, he sought modification of the decree, contending that the wife "obtained an unconscionable advantage due to his ignorance concerning the tax consequences of the sale of the business." *Id.* at 963, 536 N.W.2d 85. Although the husband asserted that the tax consequences of the sale were not within the reasonable contemplation of the parties at the time of the agreement, the Court of Appeals, relying on *Pascale v. Pascale,* 229 Neb. 49, 424 N.W.2d 890 (1988), reasoned that the husband had intimate knowledge of the business and regular contact with an accountant. The court thus concluded that the tax consequences were reasonably contemplated at the time of the agreement and that the agreement was not subject to modification.

Gruber argues that *Pascale* and *Robbins* control the instant case and bar modification of the decree because it was within the reasonable contemplation of Witters at the time the settlement agreement was made to properly draft the language incorporated in the decree. He contends that because she failed to do so at the time, there is no justification for now modifying the decree in order to correct the error. Both *Pascale v. Pascale, supra,* and *Robbins v. Robbins,* 3 Neb. App. 953, 536 N.W.2d 77 (1995), however, are distinguishable from the instant case. In both cases, the issue was whether modification of the agreement of the parties was justified based on a contention that the agreement as made was inequitable. In contrast, the instant case presents the issue of whether modification of a decree which fails to properly preserve the undisputed agreement of the parties is justified because such result is grossly inequitable. Because it is

undisputed that neither party reasonably contemplated that the agreement would result in Witters' taking less than one-half of Gruber's pension, *Pascale* and *Robbins* are inapposite.

Gruber also argues that the district court erred in modifying the decree because denying Witters her approximately $29,000 interest in the pension does not result in an inequitable distribution of property between the parties. He contends that "[t]he issue that this Court must determine is whether or not $29,069.01 is gross [sic] inequitable if not awarded to [Witters]." Brief for appellant at 16. In support of this argument, he again relies on *Pascale* and *Robbins* and further cites *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998). We disagree with both his statement of the issue and his citation of authority.

In *Pascale*, we held that the $26,672 incurred by the husband in tax liability as a result of the agreement he voluntarily entered into did not result in a division of property that was grossly inequitable. In *Robbins*, we similarly held that a $37,000 tax liability incurred by the husband as a result of a voluntary property settlement agreement was not grossly inequitable. In *Hoshor*, we addressed the division of a husband's pension benefits set forth in a property settlement agreement reached by the parties and incorporated into the decree. The provision of the consent decree at issue provided that " '[the husband] is the beneficiary of a pension and retirement plan . . . . [The wife] should receive one-fourth of any payments received from the pension and retirement plan by [the husband] at the time such payments are received.' " *Id.* at 745, 580 N.W.2d at 519. The husband argued that gross inequity would result unless the consent decree was modified to limit the wife to one-fourth of the pension benefits "existing as of the date of the termination of the parties' marriage, rather than to give the wife one-fourth of the pension benefits when ultimately obtained by the husband." *Id.* at 753, 580 N.W.2d at 522. Noting that we could not ascertain from the record to what extent the wife's share would be greater under the decree than if it were modified, we declined to find the existence of gross inequity. We further noted that because the parties were represented by counsel at the time the settlement was entered into and that they both understood the terms of the agreement, the "wife is entitled to the benefit of her bargain." *Id.* at 753, 580 N.W.2d at 523.

Gruber contends that *Pascale v. Pascale*, 229 Neb. 49, 424 N.W.2d 890 (1988), and *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995), establish that the failure to award the $29,000 amount to Witters "in and of itself is not gross inequity." Brief for appellant at 18. He further argues that because Witters bargained to receive her one-half interest in the pension by way of a QDRO, she is entitled to only the benefit of her bargain, as in *Hoshor v. Hoshor, supra*. The issue in this case, however, is not simply whether the failure of the decree to award Witters $29,000 as her one-half interest in the pension results in a property division that is inequitable, but, rather, whether the failure of the original decree to fully preserve the undisputed agreement of the parties would result in gross inequity. It is clear that the benefit of the bargain in this case was a one-half share of the pension plan, not the legal device by which it was originally sought to be realized. The unforeseen refusal of the city to recognize a QDRO would unfairly deprive Witters of this benefit and allow Gruber to retain it, thereby requiring modification of the decree to prevent a gross inequity. *Pascale*, *Robbins*, and *Hoshor* are therefore not applicable to this case.

Based on the record before us, particularly the undisputed evidence that both parties intended to divide the pension equally as of July 20, 1995, we conclude that the district court did not abuse its discretion in finding that gross inequity would result in the absence of modification of the decree. The judgment of the district court is therefore affirmed.

AFFIRMED.