275 Neb. 492
DONNA SCHWARTZ, APPELLEE AND CROSS-APPELLANT,
v.
RODNEY SCHWARTZ, APPELLANT AND CROSS-APPELLEE.
No. S-06-1271.
Supreme Court of Nebraska.
Filed April 18, 2008.
Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for appellant.
Jane F. Langan, of Rembolt Ludtke, L.L.P., for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
The district court entered a decree in January 1999, dissolving the marriage of Donna Schwartz and Rodney Schwartz. In 2005, Donna alleged that Rodney's military pension was not being properly divided, and after a trial, the court entered an order effecting a division of the pension that was different than the decree. The main issue is whether the court could modify the dissolution decree.

SCOPE OF REVIEW
[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. Gruber v. Gruber, 261 Neb. 914, 626 N.W.2d 582 (2001). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007).
[2] An appellate court, reviewing a final judgment or order in a contempt proceeding, reviews for errors appearing on the record. Klinginsmith v. Wichmann, 252 Neb. 889, 567 N.W.2d 172 (1997). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id.
[3] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. See Hoshor v. Hoshor, 254 Neb. 743, 580 N.W.2d 516 (1998).

FACTS
On January 8, 1999, the marriage of Donna and Rodney was dissolved pursuant to a decree that incorporated a property settlement agreement dividing the marital estate. In the agreement, the parties agreed that an attached qualified domestic relations order (QDRO) dividing Rodney's military retirement account should be entered. The agreement stated that the proposed QDRO should provide Donna 43 percent of Rodney's monthly military retirement benefits and make her the beneficiary of the survivor benefit plan (SBP). The document specified that the parties had chosen the survivor benefit for Donna in lieu of an equal 50-percent distribution of the monthly benefits. The agreement further provided that the proposed QDRO was attached and marked as an exhibit. However, unknown to the parties, the proposed QDRO was not entered by the district court, though it appeared in the file.
We pause here to note that although the parties and the district court refer to this order as a QDRO, the order is actually a military court order, which is the military's version of a QDRO. To prevent confusion, we will also refer to the order as a QDRO.
The proposed QDRO was sent to the Defense Finance and Accounting Service (DFAS) office in January 1999, immediately following the district court's entry of the decree and property settlement agreement. In a letter dated January 21, 1999, the Denver, Colorado, DFAS office informed Rodney that it had received a QDRO pertaining to his divorce and that in order to comply with this order, the DFAS needed him to complete "ARPC Form 64, RCSBP Election Change," and "ARPC Form 14, RCSBP Election Statement for Former Spouse Coverage." Donna was required to, and did, complete a form 14. Rodney also completed a form 14, but he testified that he did not complete a form 64 because the DFAS indicated to him that the form was a change of beneficiary form and the decree provided that he was to keep Donna as the beneficiary.
Donna testified that she corresponded with the DFAS regarding the QDRO and that the DFAS informed her that she had taken all steps necessary to entitle her to the military retirement benefits. She further testified the DFAS told her that she was to contact that office again 6 months prior to Rodney's 60th birthdaythe date he was entitled to begin receiving retirement benefitsto provide the office with her current mailing address.
After this correspondence with the DFAS, the parties believed the proposed QDRO had been approved by the DFAS because they heard nothing more from the DFAS. Rodney continued in his duties with the Air Force for an additional 3 months and retired on April 30, 1999.
However, when Donna contacted the DFAS in March 2004-6 months before Rodney's retirement benefits were to startshe was informed that the military had no record of the QDRO. Donna worked to resolve the matter, but in the meantime, Rodney was required to designate a beneficiary of the SBP in his retirement application. Rodney testified that he selected Donna as the beneficiary, but that the military denied his request. He stated the military told him that he had the option of either electing his current wifeRodney had remarried in 2000as the beneficiary and later petitioning for a change or losing the opportunity to designate a beneficiary forever. Consequently, Rodney chose to elect his current wife as the beneficiary of the SBP. However, Rodney has since been unsuccessful in changing the beneficiary from his current wife to Donna.
Donna has also been unsuccessful in changing the SBP, though as of the time of trial, she was still trying. Additionally, she was unsuccessful in her attempt to enter the proposed QDRO with the DFAS, though not because the district court had not entered or signed it, but, rather, because the QDRO awarded her 43 percent of Rodney's retirement "as of the date of the Decree" and the DFAS stated that it had no way of determining that amount. The DFAS informed Donna that she needed to obtain a clarifying order that awarded her a fixed dollar amount or a percentage of Rodney's retirement pay.
In October 2004, Rodney began receiving his military retirement benefits. He did not forward any of the payments from 2004 to Donna and only began forwarding a portion of the 2005 payments after this action was filed.
In August 2005, Donna filed a verified motion to show cause why Rodney should not be held in contempt of the decree for (1) failing to provide her with amounts already received that should have been set aside to her, (2) not making appropriate arrangements to retain her as the SBP beneficiary, (3) purposefully reducing his benefits by taking disability, and (4) refusing to deliver necessary and requested documents regarding the account. In her motion, she sought, among other things, equitable relief in the form of an award modifying her interest in Rodney's military retirement benefits from 43 to 50 percent if she could not be designated as the beneficiary of the SBP.
In October 2005, Donna filed a motion to determine the parties' rights and interests to the military retirement benefits. In her motion, she prayed that the district court enter a clarifying order consistent with the DFAS' requirements for the entry of a QDRO and "to the extent any benefit contemplated to be received by [Donna] is no longer available, that the Court enter an appropriate order requiring [Rodney] to provide an equivalent substitute performance." Rodney responded to Donna's motion, asking the court to "stay within its jurisdictional limits in regards to the Decree which was entered herein."
The district court consolidated Donna's motions for hearing. At the hearing, the parties presented evidence on what terms the QDRO should include, and on June 2, 2006, the court entered a memorandum regarding the QDRO. The court found, among other things, that based on the evidence before it, the court could not find fault on the part of either of the parties which led to Rodney's inability to name Donna as the surviving spouse and, consequently, the parties should bear the impact of the loss of this benefit between them. The court determined that Donna should receive the benefit of the cost of living and other adjustments that are made to the pension from time to time. The court then directed the parties to calculate the amounts which Rodney should have already paid Donna and to submit the calculation to the court at the time the new QDRO was submitted.
On August 24, 2006, the district court entered an order dividing Rodney's military retirement benefits in which it (1) awarded Donna $11,336.21 for unpaid amounts of retirement pay at an interest rate of 7.297 percent, (2) required the parties to pay their own attorney fees, and (3) held that all terms and provisions of the decree not in direct conflict with this order should remain in full force and effect.
The district court also entered an "Order Dividing Military Retirement" that replaced the proposed QDRO. In the order, the court ignored the point-value method the parties argued at the hearing and instead calculated Donna's share to be 50 percent.
Rodney filed a motion for new trial, requesting the district court to reconsider numerous provisions of the orders, including the interest rate and the percentage of Donna's share of the military retirement benefits. After a hearing on the motion, the court entered an "Amended Order Dividing Military Retirement" in which it addressed several of Rodney's concerns, but it did not change either the interest rate or the percentage of Donna's share. The court found that the order represented an equitable distribution.

ASSIGNMENTS OF ERROR
Rodney assigns three errors: (1) The district court lacked jurisdiction to enter a QDRO not in accordance with the original decree and property settlement agreement; (2) the district court abused its discretion in entering a QDRO that varied from the terms of the original decree and property settlement agreement and was inconsistent with federal law; and (3) the district court abused its discretion in not including in said order, provisions that are material and necessary to the proper implementation of the order by the military.
Donna cross-appeals and assigns three errors: The district court erred (1) in not holding Rodney in civil contempt for failing or refusing to (a) take proper steps to ensure Donna would receive direct payment for her share of Rodney's military retirement or make those payments to Donna directly and (b) take proper steps to maintain Donna as the beneficiary of the SBP in connection with the military retirement; (2) in deducting one-half of the SBP premium from Donna's share of the military retirement; and (3) in failing to award Donna attorney fees.

ANALYSIS
Rodney's entire argument rests on the premise that the district court "modified" the property settlement agreement when it entered an order dividing the military retirement benefits that varied from the terms of the proposed QDRO agreed to by the parties. Under Nebraska law, a district court can modify the division of pension benefits, upon application, notice, and hearing, if the failure to modify the decree would result in fraud or gross inequity. See Gruber v. Gruber, 261 Neb. 914, 626 N.W.2d 582 (2001).
The district court's entry of the order met the requirements to modify pension benefits, as it was (1) entered pursuant to an application, notice, and hearing for modification and (2) entered to remedy a gross inequity. In Neujahr v. Neujahr, 218 Neb. 585, 357 N.W.2d 219 (1984), the former wife instituted contempt proceedings against her ex-husband, claiming that he withheld personal property assigned to her under the divorce decree. The district court, without notice or hearing, modified its original decree. The ex-husband appealed, and this court held that without notice, hearing, and a formal application to the district court for either interpretation of the decree or modification of the decree, the district court's order modifying the decree was void.
In the case at bar, Donna filed a motion entitled "Motion to Determine Rights and Interests" that sought relief in the form of
a clarifying order consistent with any and all requirements of the United States Air Force and/or any other applicable military department effectuating the terms of the parties' agreement and the decree herein; and, to the extent any benefit contemplated to be received by [Donna] is no longer available, that the Court enter an appropriate order requiring [Rodney] to provide an equivalent substitute performance.

(Emphasis supplied.)
Although Donna's motion to determine rights and interests did not explicitly ask the district court to modify the proposed QDRO, her use of the phrase "equivalent substitute performance" indicates that she sought modification of the QDRO if she could not be named the beneficiary of the SBP. That she sought modification is further evident when her motion to determine rights and interests is viewed in conjunction with her motion for contempt, which asked for an "Order awarding [Donna] up to 50% of [Rodney's] total military retirement." Though the relief she sought in her motion for contempt cannot be granted in such a motion, when her two motions were combined for hearing, we conclude that Rodney was given notice that Donna sought modification. In fact, the record reflects that Rodney presented evidence with respect to the terms of the modified QDRO at the hearing, thus making it apparent that Rodney knew Donna sought modification.
[4] The nature of an action, whether legal or equitable, is determinable from its main object, as disclosed by the averments of the pleadings and the relief sought. See Dillon Tire, Inc. v. Fifer, 256 Neb. 147, 589 N.W.2d 137 (1999). This determination is unaffected by the conclusions of the pleader or what the pleader calls it. Id. Thus, despite the fact that Donna never explicitly requested modification in a motion that could provide her such relief, the record reflects that when the circumstances are viewed as a whole, Donna's motion to determine rights and interests was a proper application for modification and provided Rodney notice that Donna sought modification. Therefore, we find that the first requirement to modify a QDRO was met.
The next question is whether the failure to modify the decree would result in fraud or gross inequity. We note that the district court did not technically determine that the property settlement agreement should be modified because of gross inequity; though, by implication, that is precisely what the court did when it entered an order inconsistent with the property settlement agreement.
[5] Where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, provisions dealing with division of pension benefits will not thereafter be vacated or modified in the absence of fraud or gross inequity. Gruber v. Gruber, 261 Neb. 914, 626 N.W.2d 582 (2001). In Gruber, the court modified the division of pension benefits on the basis of gross inequity upon an application to modify. The former wife sought modification of the divorce decree because the city board of trustees for the police and fire retirement system refused to recognize a QDRO pertaining to her former husband's pension. This court found that because neither party could reasonably have contemplated the city's refusal to recognize a QDRO, the district court did not abuse its discretion in finding that gross inequity would result in the absence of modification of the decree that would allow the city to recognize the QDRO.
In the case at bar, the parties executed a property settlement agreement that was incorporated into a decree entered on January 8, 1999. The property settlement agreement provided for the division of Rodney's military retirement account by an attached QDRO. The parties agreed the QDRO would "[set] aside 43% of the value of such plan with [Donna] named as an alternate payee." The parties further agreed that in exchange for setting aside less than 50 percent of the plan to Donna, she would be the beneficiary of the SBP.
However, for reasons that were disputed by the parties, the proper forms were not in place at the DFAS to permit Donna to qualify as the beneficiary of the SBP. Rodney testified that this forced him to designate his new wife as the beneficiary because the military told him that he could not designate Donna as the SBP beneficiary without the proper forms, and that, consequently, he would lose the right to do so in the future if he did not designate his current wife as the beneficiary. The district court found merit in Rodney's explanation and stated that it could not find fault on the part of either of the parties which led to Rodney's inability to designate Donna as the beneficiary of the SBP.
Nevertheless, the change in beneficiary undoubtedly altered the parties' agreement. Therefore, because this change was material to the parties' agreement and could not be contemplated at the time of the decree, we find that a gross inequity existed.
Having determined that the district court could have modified the decree, we turn to whether the court abused its discretion in any of its modifications. Rodney argues that the district court incorrectly valued his retirement points and improperly awarded Donna an interest in the points Rodney accumulated subsequent to the marriage. He specifically argues Donna should not be entitled to share in the value of the 35½ points he earned during the 3 months he served subsequent to the parties' divorce. Implicitly, Rodney argues that the district court should have used the point-value method to value Donna's percentage of Rodney's military retirement benefits.
At the time the decree was entered, the court determined that Rodney had accumulated 3,991½ points. The evidence at the hearing showed that Rodney retired April 30, 1999, with 4,027 total points and that no additional points were subsequently earned. The 3,991½ points represented 99.118 percent of the retirement, and the district court merely rounded Donna's 49.559 percent upward to an even 50 percent. The court recognized that it had not used the point-value method that the parties had presented at the hearing to value Donna's percentage of Rodney's benefits, but it noted that even if it had used the point-value method, the difference between the point-value method and what the court had done amounted to less than one-half of 1 percent and only made a $7-per-month difference. The court found that this was not a material difference and that the order represented an equitable distribution.
[6-8] The purpose of a property division is to distribute the marital assets equitably between the parties. Gangwish v. Gangwish, 267 Neb. 901, 678 N.W.2d 503 (2004). In dissolution proceedings, the trial court has broad discretion in valuing and dividing pension rights between the parties. Webster v. Webster, 271 Neb. 788, 716 N.W.2d 47 (2006). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007).
We find no abuse of discretion in the district court's valuation of Rodney's retirement points. Although Rodney's distribution amounted to a $7-per-month reduction from the amount that he would have received if the court had used the point-value method, the record does not reflect that this distribution was inequitable under the circumstances. The court's decision was not based on reasons that were untenable or unreasonable, nor was it against justice or conscience, reason, and evidence.
Rodney next argues that the district court abused its discretion in changing the judgment interest rate from 5.513 to 7.297 percent. However, Rodney fails to recognize that the agreed-upon interest rate in the decree related only to unpaid alimony: "[i]nterest shall be paid on unpaid alimony at the rate of 5.513%." Thus, because the court did not award alimony, but, rather, entered a judgment as to the property settlement, the court did not abuse its discretion in fixing the judgment interest rate at the prevailing rate.
[9-11] In Donna's cross-appeal, she argues that the district court erred in not holding Rodney in contempt. When a party to an action fails to comply with an order of the court made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. Klinginsmith v. Wichmann, 252 Neb. 889, 567 N.W.2d 172 (1997). "Willful" means the violation was committed intentionally, with knowledge that the act was in violation of the court order. Id. A party's contempt must be established by proof beyond a reasonable doubt. Id.
In the case at bar, the district court found that based on the evidence before it, the court could "find no fault on the part of either of the parties which lead [sic] to [Rodney's] inability to name [Donna] as the surviving spouse." Therefore, the court did not hold Rodney in contempt for his failure to designate Donna as the beneficiary of the SBP. On review of the record, we find that the court's decision is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
Donna also argues that Rodney failed to pay amounts due Donna under the proposed QDRO and, thus, should be held in contempt. The district court never explicitly stated that it was finding Rodney in contempt, but it did order Rodney to pay Donna $10,359.54 in arrearages. Thus, we find no merit to this argument.
Donna next argues that the district court erred in deducting one-half of the cost of the SBP premium from her share of the military retirement. The sole basis for her argument is that the change in beneficiary was Rodney's fault and that she should not have to pay for his mistake. Because we can find no error in the district court's determination that the change in beneficiary was neither party's fault, we find no abuse of discretion in the court's deducting one-half of the cost of the SBP premium from Donna's share.
Donna claims that the district court erred in failing to award her attorney fees. Again, the sole basis for her argument is that the change in beneficiary was Rodney's fault and that she should not have to pay for his mistake. We find nothing in the record to show that the change in beneficiary was either party's fault. Therefore, we find no abuse of discretion. We find no merit to Donna's cross-appeal.

CONCLUSION
For the above-stated reasons, we affirm the district court's order in its entirety.
AFFIRMED.
HEAVICAN, C.J., not participating.