775 N.W.2d 479 (2009)
18 Neb. App. 145
Gregory A. GING, appellant,
v.
Natalie L. GING, appellee.
No. A-08-1249.
Court of Appeals of Nebraska.
November 24, 2009.
*481 Kelly T. Shattuck, of Cohen, Vacanti, Higgins & Shattuck, Omaha, for appellant.
Mark S. Bertolini, of Bertolini, Schroeder & Blount, Bellevue, for appellee.
INBODY, Chief Judge, and IRWIN and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Gregory A. Ging appeals from a decree of dissolution entered by the district court for Sarpy County on November 3, 2008, which dissolved his marriage to Natalie L. Ging. Gregory's primary complaint on appeal relates to the division of his retirement account. For the reasons that follow, we affirm.
BACKGROUND
Gregory and Natalie were married on June 28, 1986, in Omaha, Nebraska. On July 3, 2007, Gregory filed a complaint for dissolution of marriage in Sarpy County District Court. The trial was held on May 28, 2008. Because the issue on appeal relates only to the division of property, specifically Gregory's retirement account, we limit our discussion of the facts to only those necessary for the resolution of this issue.
Among the marital property is Gregory's Omaha Public Power District (OPPD) 457 retirement account. On April 16, 2007, the parties took out a $50,000 loan against this account to pay certain marital debts, and Gregory testified that after accounting for the loan, the value of his account was $248,358.96. An account statement dated September 19, 2007, shows the withdrawal representing the $50,000 loan and reports that the account was valued at $320,475. On March 31, 2008, an account statement reported a value of $298,358.96.
Natalie disputed that the $50,000 loan was a marital debt. Natalie testified that when she signed the document authorizing the loan from Gregory's 457 account, she was not aware that the loan was for *482 $50,000; rather, she believed it was for an amount between $4,000 and $9,000.
Natalie owns three retirement accounts which are subject to division. Evidence received at trial valued Natalie's OPPD 457 retirement account at $22,974, her Wells Fargo 401K retirement account at $16,050.81, and her OPPD 401K retirement account at approximately $39,760.11. Natalie took out two loans against her OPPD 401K retirement account to pay marital debt, and the combined outstanding balance of those loans is $10,519.40.
In addition to their retirement accounts, the parties also owned three parcels of real property, two tractors, three vehicles, an Ameritrade investment account, and various items of personal property. Gregory is the insured and beneficiary of a life insurance policy which has a cash value of $10,762.60; he also has an OPPD pension plan. Marital debts in addition to the loans from the parties' retirement accounts include debts to American Express, AT&T, Wells Fargo, and a mortgage on the marital home.
Following the trial, the district court took the matter under advisement.
On June 26, 2008, the district court apparently issued written findings to counsel in a letter and directed Gregory's attorney to prepare a decree in accordance with the findings. That letter does not appear in the record. On September 24, prior to entry of a decree, Gregory filed a motion to reconsider, clarify, and compel. The motion states:
On June 26, 2008, the court sent Tentative Findings to counsel setting a specific dollar amount [that Natalie] would be awarded from [Gregory's] 457 Plan instead of a percentage of the Plan. As the Court is aware, the Plan is subject to market fluctuations and dropped in value [between May 2008 and September 2008]. This Finding would result in [Gregory's] absorbing all the market loss which is unfair and unconscionable. [Gregory] requests the language be changed to award one-half of the value after subtracting the existing loan against the fund.
On October 1, Gregory filed an amended motion to reconsider, clarify, and compel; the changes in the amended motion are not relevant to this appeal.
On October 23, 2008, Natalie filed a motion for an order requesting that the court enter the decree. The same day, Natalie also filed an objection to Greg's amended motion. The objection asked the court to deny Gregory's amended motion and grant Natalie's motion to compel entry of the decree. The district court heard Gregory's amended motion and Natalie's objection on October 24. Natalie's motion to compel was heard on October 31. No testimony or exhibits were offered as evidence at either of these hearings.
On November 3, 2008, the court denied Gregory's amended motion to reconsider, clarify, and compel and entered the decree of dissolution. With respect to the parties' retirement accounts, the decree provides:
[Natalie] is awarded the sum of $95,845.50 of [Gregory's] 457 Plan and her 401K and 457 Plans. Each party [is] to execute all necessary documents to effect the transfer. In valuing the plan the Court did not add back the $50,000.00 loan for the reason [that] there was sufficient evidence [that Natalie] had knowledge of the loan distribution. Each party is awarded one-half of the vested pension of the other as determined by the coverture method, the same to be set over by a Qualified Domestic [Relations] Order.
The decree ordered the parties to sell the three parcels of real property as well as *483 the two tractors and equally divide the proceeds. The court also divided the marital debts, the parties' three vehicles, and their household and personal items. The court ordered that the parties equally divide the Ameritrade account and that Gregory keep his life insurance policy.
Gregory timely filed this appeal.

ASSIGNMENT OF ERROR
Gregory assigns as error, restated, that the district court erred when it divided the parties' property, specifically as the property award relates to his 457 retirement plan.

STANDARD OF REVIEW
An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Gress v. Gress, 271 Neb. 122, 710 N.W.2d 318 (2006). This standard of review applies to the trial court's determination regarding the division of property. See id. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Schwartz v. Schwartz, 275 Neb. 492, 747 N.W.2d 400 (2008).

ANALYSIS
Gregory assigns as error the district court's award of property, particularly as the award relates to his 457 retirement plan. He specifically argues that the court erred in awarding a lump-sum amount of his retirement account rather than a percentage of the same which would account for gains and losses during the time between the rendering of the court's decision and the implementation of the decision.
In a dissolution of marriage proceeding, if the parties fail to agree on a property settlement, the court shall order an equitable division of the marital estate. Neb.Rev.Stat. § 42-366(8) (Reissue 2008). For purposes of property division, the marital estate includes any pension and retirement plans owned by either party. See § 42-366(8). Under Neb.Rev.Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. Gress v. Gress, supra. The first step is to classify the parties' property as marital or nonmarital. Id. The second step is to value the marital assets and marital liabilities of the parties. Id. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. Gress v. Gress, supra.
The purpose of a property division is to distribute the marital assets equitably between the parties. § 42-365. Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate. See, Gress v. Gress, supra; Carter v. Carter, 261 Neb. 881, 626 N.W.2d 576 (2001). The ultimate test for determining the appropriateness of the division of property is reasonableness as determined by the facts of each case. Carter v. Carter, supra.
In the decree, the trial court did not specifically assign values to the property and debts, but in our de novo review, it is clear that the court attempted to arrive at a relatively equal division of assets and debts. Aside from the retirement accounts, the court ordered that the remaining assets of any significant value the real estate and the tractorsbe sold and the net proceeds equally divided, along with the Ameritrade account. Although the court's order did not specifically so state, it appears and the record supports a *484 conclusion that the district court intended to order that Gregory pay $95,845.50 from his 457 account to Natalie as a property equalization payment. The record supports the court's division of the marital property, including the $95,845.50 payment. Although the parties did dispute the values of some of the marital property, our review of the record reveals that regardless of which party's values the court utilized, the court's award falls within the general rule that an equitable division of property is achieved so long as a spouse is awarded one-third to one-half of the marital estate.
Gregory's primary argument is that the court erred in ordering a cash payment from his retirement account as opposed to dividing the account on a percentage basis. Prior to entry of the decree, Gregory asked the court to reconsider the award of the lump-sum payment to Natalie, citing the recent decline in the stock market, which he claimed caused his 457 account to decrease in value. Gregory did not, however, offer evidence at the hearing on his motion to show that the account had actually decreased in value. Gregory makes the same argument in his brief regarding the decline in the stock market, stating that between the time of the court's tentative findings and his motion to reconsider, "the stock market crashed at levels not seen since the Great Depression," but of course, statements of counsel in a brief are not evidence. Brief for appellant at 7. See Home Fed. Sav. & Loan v. McDermott & Miller, 243 Neb. 136, 497 N.W.2d 678 (1993) (when reviewing decision of lower court, appellate court may consider only evidence included within record; party's brief may not expand evidentiary record).
In his brief, Gregory asserts that this case is analogous to our unpublished opinion in Frasier v. Frasier, No. A-07-003, 2008 WL 3523155 (Neb.App. Aug.12, 2008) (not designated for permanent publication), and also to Gruber v. Gruber, 261 Neb. 914, 626 N.W.2d 582 (2001). However, both Frasier and Gruber are distinguishable from the present case. In Gruber, the Supreme Court affirmed the modification of a decree necessitated by an employer's refusal to recognize a qualified domestic relations order designed to effectuate the division of a retirement plan. The court held that modification was appropriate to avoid a gross inequity, based upon "the record before [the court], particularly the undisputed evidence that both parties intended to divide the pension equally." Id. at 922, 626 N.W.2d at 588. In Frasier, which also involved a modification of a divorce decree, evidence was presented that the husband's retirement account became worthless due to his previous employer's filing bankruptcy, which, in turn, affected the division of his remaining retirement benefits. Under the unique facts of that case, this court concluded that modification was warranted to avoid gross inequity. In reaching this conclusion, we found that the employer's bankruptcy and the resultant decrease in the husband's pension were unforeseen.
The present case does not involve a modification of a decree to prevent gross inequity. Further, there is no evidence in the record to suggest either a gross inequity or an abuse of discretion in the division of the marital estate. To the extent that Gregory's allegations of market fluctuations are relevant, we note that such fluctuations would presumably apply to Natalie's retirement accounts as well and that such fluctuations, both upward and downward, are an ongoing occurrence.
As with any item of property, it was necessary for the trial court in this case to determine the value of the parties' *485 retirement accounts at a particular point in time in order to ultimately divide the marital estate in an equitable manner. At trial, Gregory adduced evidence of the value of his retirement account as of March 31, 2008, which was the most recent statement available to the court at the trial held on May 28. It is well settled that there is no "hard and fast" rule concerning the date on which marital property subject to division in a dissolution proceeding is valued, so long as the selected date bears a rational relationship to the property to be divided and is reviewed for an abuse of discretion. See Myhra v. Myhra, 16 Neb.App. 920, 756 N.W.2d 528 (2008). We find no abuse of discretion in the trial court's consideration of the values of the parties' retirement accounts as adduced at trial.
We further find no abuse of discretion in dividing the marital estate by ordering a lump-sum cash payment to Natalie from Gregory's retirement account as opposed to a payment on a percentage basis. In dissolution proceedings, the trial court has broad discretion in valuing and dividing the parties' retirement accounts. See Schwartz v. Schwartz, 275 Neb. 492, 747 N.W.2d 400 (2008).
For these reasons, we conclude that the district court did not abuse its discretion when it divided the parties' property in the decree, particularly regarding the award to Natalie of a lump-sum payment instead of a percentage of Gregory's 457 retirement account. The decree ordered a reasonable division of the marital estate and was not clearly against justice or conscience, reason, and evidence.

CONCLUSION
In our de novo review, we conclude that the district court did not abuse its discretion when it divided the parties' property, specifically related to the lump-sum award to Natalie from Gregory's 457 plan. We affirm the district court's entry of the decree.
AFFIRMED.
IRWIN, Judge, concurring.
I agree with the conclusion of the majority that Gregory's assertions on appeal have no merit. I write separately only to reaffirm my dissent in the case of Frasier v. Frasier, No. A-07-003, 2008 WL 3523155 (Neb.App. Aug.12, 2008) (not designated for permanent publication), and to expressly disapprove of any implication by the majority in the present opinion that would endorse or extend the holding in Frasier to any other factual situation.