IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

KOCH V. KOCH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LORI ANN KOCH, APPELLEE AND CROSS-APPELLANT,
V.
KEITH EMERY KOCH, APPELLANT AND CROSS-APPELLEE.

Filed November 18, 2014.    No. A-13-717.

Appeal from the District Court for Knox County: JAMES G. KUBE, Judge. Affirmed in part, and in part remanded with directions.

Michelle M. Schlecht and David E. Copple, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., for appellant.

Ronald E. Temple, of Fitzgerald, Vetter & Temple, for appellee.

INBODY, RIEDMANN, and BISHOP, Judges.

INBODY, Judge.

## I. INTRODUCTION

Keith Emery Koch appeals, and Lori Ann Koch cross-appeals, from the decree of dissolution entered by the Knox County District Court dissolving the parties' marriage. The parties both challenge certain portions of the decree, including findings regarding the parties' marital estate and the alimony award. Keith also contends that the district court erred in ordering him to provide security for the alimony and child support awards. Lori also assigns as error that the court erred in failing to award interest on the money judgment and alimony awards as they come due, in failing to award her the dependency exemptions, and in failing to award her sufficient child support and sufficient attorney fees.

## II. STATEMENT OF FACTS

The parties were married on July 26, 1986. They had six children. The parties' three youngest children are minors and are affected by the parties' dissolution proceedings which

- 1 -

commenced on March 19, 2012, when Lori filed the complaint for dissolution of marriage. Trial was held on March 19 and 20, 2013, with the parties litigating, inter alia, the classification of the parties' property as marital or nonmarital, the valuation of the marital estate, child support, tax dependency exemptions, and alimony.

## 1. REAL PROPERTY

The parties litigated whether real property consisting of agricultural land and the residential home and acreage owned by them was marital or nonmarital and the valuation of the property. At the time of the dissolution hearing, the parties owned seven contiguous tracts of land totaling nearly 320 acres. The details regarding the transfers of title from Keith's parents and the legal descriptions of each of the seven tracts are outlined separately.

### (a) Tract 1

Tract 1 consists of the acreage which contains the parties' residence and outbuildings on approximately 12.5 acres. The buildings located on tract 1 include the home that the parties lived in, a detached garage, a farrowing barn, and sheds. Tract 1 was gifted to Keith by his parents in 1991. Also in 1991, Keith and Lori executed a deed of trust on tract 1 in order to secure a $20,000 loan in order to build a farrowing barn on tract 1. The legal description of tract 1 is as follows:

> A tract of land located in the Southeast Quarter (SE1/4) of Section Twenty (20), Township Thirty-Two (32) North (N), Range Two (2) West of the 6th P.M., Knox County, Nebraska, containing approximately 12.5 acres, more or less, described as follows:

> Beginning at a point located on the Eastern boundary of the Southeast Quarter (SE1/4) of said Section Twenty (20), said point being 1,320 feet North of the Southeast Corner of the Southeast Quarter (SE1/4) of said Section Twenty (20); thence Southerly along the Eastern boundary of the Southeast Quarter (SE1/4) of said Section Twenty (20) a distance of 1,320 feet to the Southeast Corner of the Southeast Quarter (SE1/4) of said Section Twenty (20); thence Westerly along the South boundary of the Southeast Quarter (SE1/4) of Section Twenty (20) a distance of 577 feet; thence North a distance of 602 feet; thence Northeasterly to the point of beginning.

### (b) Tract 2

Tract 2 consists of approximately 40 acres including 24.07 acres of agricultural land and the 12.5 acres previously gifted to Keith as tract 1. Tract 2 was gifted to Keith by his parents in 1995 in consideration of "Love and Affection." The legal description of tract 2 is as follows:

> The Southeast Quarter of the Southeast Quarter (SE 1/4 SE 1/4) of Section Twenty (20), Township Thirty-two (32) North, Range Two (2) West of the 6th P.M., Knox County, Nebraska, **LESS** 3.43 conveyed to the State of Nebraska for highway purposes by a deed recorded in Book 86, Page 105 of the Knox County Deed Records and **including** a tract previously conveyed to Grantee containing approximately 12.5 acres, more or less, as described as follows: [Legal description of tract 1.]

## (c) Tract 3

Tract 3 consists of approximately 40 acres of agricultural land which was gifted to Keith by his mother in 1996 in consideration of "Love and Affection." The legal description of tract 3 is "[t]he Northeast Quarter of the Southeast Quarter (NE 1/4 SE 1/4) of Section Twenty (20), Township Thirty-two (32) North, Range Two (2) West of the 6th P.M., Knox County, Nebraska."

## (d) Tract 4

Tract 4 consists of approximately 40 acres of agricultural land which was gifted to Keith in 1997 by his mother in consideration of "Love and Affection." The legal description of tract 4 is "[t]he Northwest Quarter of the Southeast Quarter (NW 1/4 SE 1/4) of Section Twenty (20), Township Thirty-two (32) North, Range Two (2) West of the 6th P.M., Knox County, Nebraska."

## (e) Tract 5

Tract 5 consists of approximately 40 acres of agricultural land which was gifted to Keith by his mother in 1998 in consideration of "Love and Affection." The legal description of tract 5 is as follows:

> The Southwest Quarter of the Southeast Quarter (SW 1/4 SE 1/4) of Section Twenty (20), Township Thirty-Two (32) North, Range Two (2) West of the 6th P.M., Knox County, Nebraska, less portion thereof conveyed to [the] State of Nebraska for highway purposes by deed recorded at Book 86, Page 105 of the Knox County Deed Records.

## (f) Tract 6

Tract 6 consists of approximately 80 acres of agricultural land which was purchased from Keith's mother in 1996 for $400 per acre. The parties signed a promissory note in the amount of $28,130 to facilitate the purchase of tract 6. The legal description of tract 6 is as follows:

> The East Half of the Southwest Quarter (E 1/2 SW 1/4) of Section Twenty (20), Township Thirty-two (32) North, Range Two (2) West of the 6th P.M., Knox County, Nebraska, less portion thereof conveyed to the State of Nebraska for highway purposes by Deed recorded in Book 87, Page 131 of the Deed Records of Knox County, Nebraska.

## (g) Tract 7

Tract 7 consists of approximately 80 acres of agricultural land which was purchased from Keith's mother's estate in 2001 for $400 per acre. Although the parties took out a $32,000 loan to purchase tract 7, tract 7 was titled solely in Keith's name. The legal description of tract 7 is as follows:

> The West Half of the Southwest Quarter (W1/2SW1/4) of Section Twenty (20), Township Thirty-Two (32) North, Range Two (2) West of the 6th P.M., Knox County, Nebraska, less portion thereof conveyed to the State of Nebraska for highway purposes by deed recorded in Book 86, Page 105 of the Knox County Deed Records of Knox County, Nebraska.

### (h) Joint Tenancy Deed

In December 2000, Keith and Lori executed a warranty deed conveying tracts 1 through 5 and tract 6 to Keith and Lori as joint tenants. (Tract 7 was not purchased until 2001.) A copy of the joint tenancy warranty deed was admitted into evidence as exhibit 102. This deed provided that the property was being conveyed in consideration of "Love and Affection."

Keith testified that when he executed exhibit 102, he did not understand that the deed, which conveyed tracts 1 through 6 to Keith and Lori as joint tenants in consideration for "Love and Affection," was transferring his interest to him and Lori. He also testified that he understood that the deeds conveying parcels of real estate from his parents to him for "Love and Affection" conveyed his parents' interest in the real estate to him. According to Keith:

> The intent to give [the land] to my wife was never that (sic) case. . . . The only reason it was done is because, yes, she did say if her name was good enough to go on the loan, she wanted her name on the land. I explained, and this probably went on for at least five years, and I didn't see the point because I said, well, if something happens - if I die, you're going to get it all anyway because that's how estates work, as far as I know.
>
> And the estate was never worth enough to ever be subject to estate tax, so I honestly didn't see the point. Why pay a lawyer to do a transaction or deed or whatever you want to call it when it would have no effect. Therefore, I drug my feet on it.
>
> We were in at Riesberg's doing wills. She goes, I want . . . my name on that land. And I said I don't see the point, but fine, whatever.

Keith also testified that he executed the joint tenancy deed because "if something happened to me, there would be a simple transfer in the estate."

Lori testified that she was concerned that if anything happened to Keith, that Keith's siblings would come after the property. Lori told Keith that her signature was good enough for the loans, "it should be good enough for the deed, too." Keith responded that he "did not think that it was necessary"; however, when the parties were doing their wills, Lori renewed the issue telling Keith that she felt "it was necessary to protect [her] and the kids from his siblings if something were to happen to him."

### (i) Valuation of Real Property

Glen Anderson, a certified general appraiser for approximately 34 years and a licensed real estate broker for 23 years, was hired by Lori to perform an appraisal of the parties' real estate which he performed in accordance with the Uniform Standards of Professional Appraisal Practice. He appraised the properties using both the sales comparison and income approaches, but testified that the sales comparison approach carried the most weight for him because it was the most accurate. Anderson performed a visual inspection of the property, driving the property but not walking the property, and he accessed information from the "Knox County Soil Book" regarding the variations of soils that were present on the land. According to Anderson's appraisal report, the agricultural land (excluding the acreage which includes the residence) consists of a total of 305.85 acres which includes 220.84 acres of dry cropland, 82.59 acres of pasture, and 2.42 acres of roads. The report states that "[t]he cropland is rolling, with some being gently rolling. The grassland is about half low land which is occasionally flooded." Anderson arrived at

an opinion, to a reasonable degree of certainty within his field, that the value of the agricultural land was $6,400 per acre for a total value of $1,957,440. Anderson appraised the acreage and residence at $170,000. Anderson testified that he considered his appraisals to be conservative. Anderson's opinion of the rental value of cropland and pasture was admitted into evidence as exhibit 41. In Anderson's opinion, cash rent for cropland ranged from $250 to $325 per acre and cash rent for pasture land ranged from $85 to $120 per acre.

Keith testified that there was no comparison between his land and the comparable properties used by Anderson. Keith opined that his farmland was worth $3,200 per acre "at the most" and that the acreage including the residence was worth between $120,000 and $130,000.

## 2. FARM EQUIPMENT

Exhibit 74 contains Keith's and Lori's valuations of farm equipment and identifies items Keith claims he inherited from his parents. Keith valued the farm equipment at $115,050 based on his opinion that some of the equipment was inherited and some gifted to him before his father died.

James Stock was retained by Lori to value the farm equipment. His deposition was admitted into evidence as exhibit 17, and his valuation of the parties' farm equipment was received into evidence as exhibit 16. He submitted a valuation of the farm equipment at an approximate auction price as of the first week of December 2012 at $148,400. Exhibit 16 contains an itemized list of the farm machinery and the value of each item. According to Stock, December auction prices are slightly higher, because at that time of year, farmers know if they have money to spend and farmers may want to spend money before the tax year ends. Stock further testified that if the court wanted to discount the value of the farm equipment to reflect lower September or March auction pricing, a realistic discount would be 10 percent.

## 3. PARTIES' INCOME

### (a) Keith

Keith' income can be determined from the parties' income tax returns which contain information regarding the income from the farming operation. Income tax returns from the years 2005 through 2011 were admitted into evidence. The following chart sets forth the year, income, depreciation, and total with income and depreciation added back in:

| YEAR | INCOME | DEPRECIATION | TOTAL |
|------|--------|--------------|-------|
| 2005 | $33,247 | $13,458 | $46,705 |
| 2006 | 28,238 | 24,598 | 52,836 |
| 2007 | ( 4,588) | 9,429 | 4,841 |
| 2008 | ( 17,133) | 10,533 | ( 6,600) |
| 2009 | ( 29,965) | 9,190 | ( 20,775) |
| 2010 | ( 10,309) | 11,469 | 1,160 |
| 2011 | 78,613 | 15,728 | 94,341 |

The parties' 2012 tax returns had not yet been filed, but a sample of a joint 2012 return with Keith, married filing jointly, and a 2012 return with Keith, married filing single, were received

into evidence. The 2012 returns showed income of $56,861 and depreciation of $5,435 for total income of $62,296.

(b) Lori

During the parties' marriage, Lori initially worked on the farm, but in October 1989, she got a job at an electronics company where she worked until 1992. During the marriage, Lori also provided daycare from 1993 until 1998, worked as a certified nursing assistant from 1998 until 2000, and worked at a factory from 2000 to the summer of 2001, until she was laid off from that job and became pregnant. Lori testified that her earnings never exceeded $20,000 per year. In January 2002, Lori enrolled as a full-time college student pursuing a nursing degree. She did not complete that degree, withdrawing from college due to a health condition with 83 or 84 credits completed of the 120 necessary for her bachelor's degree. Since 2005, Lori has worked sporadically as a cook at a restaurant and bar not earning more than $10,000 per year. She receives monthly Social Security benefits of $714, for annualized net benefits of $8,568. Lori testified that her health issues cause her fatigue, which limits even the part-time jobs that she would be able to find.

Lori testified that from 1986 until late 2011 or early 2012, she spent hours mowing and 4 or 5 hours per month taking care of the bookkeeping for the farming operation by balancing the checkbook, reconciling bank statements, keeping track of bills, and getting information ready for taxes.

4. DISTRICT COURT ORDER

On July 26, 2013, the district court filed an order dissolving the parties' marriage. The court found that tracts 1 through 7 were marital property, valuing the residence and acreage located on tract 1 at $170,000. The court valued the remaining agricultural land at $6,000 per acre for a total valuation of $1,835,100. The court awarded tracts 3 and 7 to Lori and awarded the remaining tracts to Keith. Specifically, regarding tracts 1 through 6, the district court found that the deed transferring the property into Keith's and Lori's names as joint tenants spoke for itself and that the conveyance occurred out of the love and affection between the parties at the time the document was executed. Regarding tract 7, the court found that this tract was purchased with marital funds, it was a marital asset, and, regardless of whether tract 7 was purchased at a reduced price, both parties received the benefit of the purchase price and were entitled to the increase or decrease in the fair market value of the property. The court also ordered Keith to pay Lori a rental payment for the use of tracts 3 and 7 for the 2013 crop year in the amount of $250 per acre for dry cropland and $75 per acre for pasture with half of the rental payments due immediately and half due and owing on or before December 31, 2013. The court also found that the farm equipment was marital property and valued the equipment at $130,700.

The court awarded custody of the parties' three minor children to Lori with reasonable rights of visitation granted to Keith. The court calculated child support using a 7-year average of the parties' income tax returns, finding that Keith's total monthly gross income from all sources was $1,836 and a total monthly net income of $1,690.28. The court ordered Keith to pay child support of $705 per month for three children, $597 per month when two children were in need of support, and $412 per month when one child was in need of support. Keith was also ordered to

continue to provide health insurance on the minor children and was awarded the dependency exemptions for the minor children as long as he remained up to date on his child support obligation. He was also ordered to pay 65 percent of noncovered healthcare expenses of the minor children exceeding $480 per child per year.

In evaluating the need for alimony, the court set forth that it considered several factors, including the length of the marriage, that both parties had contributed to the successful functioning of the family and raising of the children, Lori's disability, the general health considerations of both parties, and the parties' ability to engage in gainful employment in order to support themselves. Based upon its consideration of these factors and the evidence presented, the court ordered Keith to pay Lori $750 per month in alimony to be paid until either party should die or Lori should remarry. Additionally, due to Lori's physical disability, the court ordered Keith's child support and alimony obligations to be secured by a life insurance policy, or cash equivalent, with a death benefit in the amount of $250,000, which policy shall list Lori as primary beneficiary. Finally, the court ordered Keith to pay $5,000 toward Lori's attorney fees.

## III. ASSIGNMENTS OF ERROR

Keith contends that the district court erred (1) in failing to set off as nonmarital property the real estate and farm equipment which was given to him by his parents as gifts or inheritance; (2) in ordering him to pay rent on nonmarital real property which was awarded to Lori; (3) in the valuation of farmland; (4) in its division of the farmland; (5) in awarding alimony; and (6) in ordering him to provide security for the alimony and child support awards.

Lori has cross-appealed, contending that the district court erred (1) in awarding an unequal division of the parties' marital estate; (2) in the valuation of the real estate and acreage; (3) in the amount of child support awarded; (4) in the amount of alimony awarded; (5) in failing to award interest on the money judgment and alimony awards as they come due; (6) in failing to award the dependency exemptions; and (7) in failing to award her sufficient attorney fees. We note that although Lori argues in her brief that the trial court erred in its valuation of the farm equipment, she did not assign this as error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

## IV. STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012); *Bussell v. Bussell*, 21 Neb. App. 280, 837 N.W.2d 840 (2013). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013); *Bussell v. Bussell, supra*.

## V. ANALYSIS

### 1. MARITAL ESTATE

We begin our analysis by considering the assignments of error raised by both parties relating to the marital estate, including findings related to the division and valuation of property. We first address Keith's arguments that the district court erred in failing to set off as nonmarital property the real estate and farm equipment which was given to him by his parents as gifts or inheritance. After determining what property is properly included in the marital estate, we will address Keith's and Lori's claims that the district court erred in valuing the farmland and acreage. After that, we will address Keith's related claims that the court erred in dividing the farmland between the parties and, once it did so, in ordering him to pay rent on the property which was awarded to Lori. We conclude our analysis of the parties' assigned errors regarding the marital estate by addressing Lori's assignment of error that the district court erred in awarding her an unequal division of the parties' marital estate.

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Bussell v. Bussell, supra*; *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id.* Property which one party brings into the marriage is generally excluded from the marital estate. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006); *Bussell v. Bussell, supra*.

### (a) Determination of Marital Versus Nonmarital Property

We first address Keith's arguments that the district court erred in failing to set off as nonmarital property the real estate and farm equipment which was given to him by his parents as gifts or inheritance.

### *(i) Real Property*

As we previously set forth, there are seven tracts of real property at issue. Keith claims that each of the tracts of property, or at least a portion thereof, is nonmarital and should be set off as a gift or inheritance. Keith claims that tracts 1 through 5 were gifted solely to him and should have been set off to him in spite of the fact that, in 2000, those tracts were conveyed to both him and Lori as joint tenants.

As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). Such exceptions include property accumulated and acquired through gift or inheritance. *Id.* If the inheritance can be identified, it is to be set off to the inheriting spouse and eliminated from the marital estate. *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003). The burden of proof to show that property is nonmarital remains with the person making the claim in a dissolution proceeding. *Gress v. Gress, supra*. The manner in which property is titled or transferred by the parties during

the marriage does not restrict the trial court's determination of how the property will be divided in an action for dissolution of marriage. See *Schuman v. Schuman, supra*.

Because tracts 1 through 7 were acquired during the marriage, it was Keith's burden to establish that tracts 1 through 7 were not marital property. The district court found that the deed transferring the property into Keith's and Lori's names as joint tenants spoke for itself and that the conveyance occurred out of the love and affection between the parties at the time the document was executed. The district court rejected Keith's arguments that the court should look behind the recorded legal title of the deeds. The circumstances and equities of this case justify the district court's decision. Although the evidence establishes that tracts 1 through 5 were originally gifted to Keith by his parents and titled in Keith's name alone, in 2000, these tracts were transferred into Keith's and Lori's names as joint tenants. The joint tenancy deed provided that the conveyance was in consideration for "Love and Affection" between Keith and Lori. Similarly, the deeds from Keith's parents gifting him tracts 2, 3, 4, and 5 likewise provided that those conveyances were in consideration for "Love and Affection." Although Keith testified that when he executed exhibit 102, he did not understand that the deed which conveyed tracts 1 through 6 from Keith to Keith and Lori as joint tenants for "Love and Affection" transferred his interest to Lori and himself, he acknowledged that he understood that the deeds conveying parcels of real estate from his parents to him in consideration for "Love and Affection" conveyed his parents' interest in the real estate to him. Based upon the fairness and reasonableness under the facts of this case, we cannot say that the district court abused its discretion by declining to look behind the recorded legal title of the deed and finding that tracts 1 through 6 were marital property.

Tract 7 was not included in the joint tenancy deed, as it was purchased in 2001. Tract 7 was purchased for $400 per acre and was purchased using marital funds. Even though tract 7 was purchased at a substantial discount from Keith's mother's estate, tract 7 was purchased with marital funds and Keith has not met his burden to establish that tract 7 should not be included in the marital estate.

### (ii) Farm Equipment

Keith contends that certain items of farm equipment listed on exhibit 74 were gifted or inherited from his parents and, thus, were erroneously included by the district court as part of the marital estate. The trial court found that items of farm equipment listed on exhibit 74 and identified by Keith as inherited were actually purchased from his mother's estate and that they were marital assets, since the purchase of that equipment occurred during the marriage using marital funds.

When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006); *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012).

In this case, the district court heard Keith's testimony and noted that his testimony was "not corroborated by any testamentary documentation by either his mother or his father, who both appeared to have been most fastidious in their intentions to bequest or allow their

descendants to purchase different items of their estate." Further, the stipulation and agreement concerning the accounting and distribution of the assets of Keith's mother's estate and the short form inventory and amended short form inventory, admitted into evidence as exhibits 133 through 135, set forth that Keith was to pay to his mother's estate the remaining balance of an oral contract to purchase one-half of the farm equipment and machinery. The district court heard the testimony in this case and, after reviewing the evidence, determined that the farm equipment listed in exhibit 74 was part of the marital estate. We cannot say that this determination was an abuse of the court's discretion.

### (b) Valuation of Farmland and Acreage

Having determined that the district court did not err in including tracts 1 through 7 and the farm equipment in the parties' marital estate, we address Keith's and Lori's claims that the district court erred in valuing the farmland and acreage. Keith contends that the district court erred in valuing the farmland at $6,000 per acre, arguing that the court should have accepted his valuation of $3,200 per acre instead of the appraiser's testimony. Lori contends that the district court should have accepted the valuations offered by her expert witness Anderson, who testified that the fair and reasonable valuation of the agricultural real estate was $6,400 per acre and the fair and reasonable valuation of the marital residence and acreage was $170,000. The district court valued the agricultural land at $6,000 per acre and valued the acreage and residence at $125,000.

Triers of fact are not required to take opinions of experts as binding upon them. *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996); *Anania v. Anania*, 6 Neb. App. 572, 576 N.W.2d 830 (1998). The determination of the weight that should be given expert testimony is uniquely the province of the fact finder. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012); *Anania v. Anania, supra*.

Upon our review of the record, we cannot say that the district court erred in valuing the farmland and acreage in amounts between Keith's valuations and the values given by Lori's expert, especially since the district court was in the better position to determine the credibility of the witnesses. Thus, we affirm the decision of the district court concerning the value of the farmland and the acreage.

### (c) Division of Farmland/Rental Payments

Next, we consider Keith's related claims that the district court erred in dividing the farmland between the parties and, once it did so, in ordering him to pay rent on the properties which were awarded to Lori. Keith contends that the district court erred in awarding tracts 3 and 7 to Lori, because dividing the farmland "disrupts the unified farm and the economic unit" and the division of the farmland detrimentally impacts his ability to pay the alimony and child support awards. Brief for appellant at 33.

In the instant case, the land owned by the parties is the largest marital asset. In dividing the marital estate, the district court awarded Lori tracts 3 and 7, thereby allowing Keith to have contiguous tracts 1, 2, 4, 5, and 6. The district court's decision to divide the farmland was not an abuse of discretion.

Having found that the district court did not abuse its discretion in dividing the farmland between the parties and awarding Lori tracts 3 and 7, we reject Keith's argument that the district court erred in ordering him to pay rent to Lori on tracts 3 and 7 for the year 2013. The basis for Keith's claim was that he should not be required to make rental payments on nonmarital property; however, having found earlier in this opinion that the tracts are marital property, we reject his claim that the district court erred in ordering him to make rental payments for tracts 3 and 7.

### (d) Unequal Division of Marital Estate

Finally, we consider Lori's claim that the district court erred in awarding her an unequal division of the parties' marital estate. Lori contends that the district court's graph setting forth its division of the marital estate failed to take into account tracts 2, 4, 5, and 6, which the court awarded to Keith, and that if the value of those tracts are taken into account, she was only awarded 33 percent of the marital estate.

"The purpose of a property division is to distribute the marital assets equitably between the parties." § 42-365. Accord *Ging v. Ging*, 18 Neb. App. 145, 775 N.W.2d 479 (2009). Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate. *Ging v. Ging, supra*. The ultimate test for determining the appropriateness of the division of property is reasonableness as determined by the facts of each case. *Id.*

Adding in the tracts of agricultural property to the district court's graph dividing the parties' marital estate, the division of the parties' marital estate is as follows:

| Asset | Awarded to Lori | Awarded to Keith |
|---|---|---|
| Acreage/Residence (Located on Tract 1) | | $ 125,000 |
| All Farm Equipment | | 130,700 |
| Marital Money Removed | | 4,610 |
| Other Marital Money | | 536 |
| 1993 Ford F-250 Pickup | | 4,000 |
| 1988 Oldsmobile Cutlass | | 500 |
| 1988 Pontiac Bonneville | $ 700 | |
| 1994 Ford Van | | 3,500 |
| All Livestock | | 20,800 |
| All Crops | | 52,000 |
| Tracts 2, 4, 5, and 6 (185 acres at $6,000 per acre) | | 1,110,000 |
| Tracts 3 and 7 (120 acres at $6,000 per acre) | 720,000 | |
| DEBT – Acreage | | ( 7,517) |
| NET ESTATE | $720,700 | $1,444,129 |

The total marital estate was $2,164,829, making the percentage of the marital estate awarded to Lori 33.3 percent and the percentage awarded to Keith 66.7 percent. This award falls

within the one-third to one-half rule, and we do not find an abuse of discretion by the district court.

## 2. ALIMONY AND CHILD SUPPORT AWARDS

Because our consideration of the assignments of error relating to both the child support and alimony awards are based upon the correctness of the district court's determinations regarding Keith's income, we take the rather unconventional step of addressing these issues together.

Keith contends that the $750 alimony award is "not an amount that [he] can reasonably be expected to pay based upon his income and earning capacity." Brief for appellant at 36. Lori contends that both the alimony and child support awards are inadequate because the district court abused its discretion in determining Keith's gross monthly income. She contends that instead of using averaging to determine Keith's income, the court should have used Keith's earning capacity, which Lori contends is around $5,000. She claims that $5,000 is the amount that he could earn by renting out his farmland and getting a full-time job for $10 per hour. Lori also contends that she should be awarded $2,000 per month in alimony and that the alimony award should be modified to eliminate the termination of alimony upon her remarriage.

Lori contends that the district court abused its discretion by not using Keith's earning capacity to determine his gross monthly income. The district court calculated Keith's income using a 7-year average using the parties' income tax returns. The district court found that the parties' tax returns were the most reliable evidence to determine income and found that due to the extreme fluctuation in Keith's income due to the nature of his farming operation, a 7-year average should be utilized for the purpose of the child support calculations. Based upon the 7-year average, the court found that Keith's total monthly gross income from all sources was $1,836 and his total monthly net income was $1,690.28. Based upon this determination, the court set Keith's child support obligation for three children at $705 per month. Additionally, the court ordered Keith to pay Lori alimony of $750 per month until either parties' death or Lori's remarriage.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). The guidelines provide that "[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources." Neb. Ct. R. § 4-204. Accord *Freeman v. Groskopf, supra*. Use of earning capacity to calculate child support is useful "'when it appears that the parent is capable of earning more income than is presently being earned.'" *Freeman v. Groskopf*, 286 Neb. at 720, 838 N.W.2d at 307, quoting *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999).

In the instant case, Keith has always worked as a farmer. There is no argument that he is not earning to the best of his ability; to the contrary, the evidence was uncontradicted that Keith is extremely hardworking. We find that there is no basis to use an earning capacity analysis in this case instead of actual income. The court then proceeded to set Keith's child support payments according to the child support guidelines.

However, upon our de novo review, we note that the child support award of $705 per month, when subtracted from Keith's monthly net income, takes him to $985.28, which is only slightly above the basic subsistence limitation for one person at the time the dissolution decree in this case was entered which was $958. See Neb. Ct. R. § 4-218 (rev. 2013). Further, when the additional $750 monthly alimony award is considered, the alimony award clearly brings Keith below the basic subsistence limitation. An alimony award which drives an obligor's net income below the basic subsistence limitation is presumptively an abuse of judicial discretion unless the court specifically finds that conformity with the basic subsistence limitation would work an "'unjust or inappropriate'" result in that particular case. *Gress v. Gress*, 274 Neb. 686, 702, 743 N.W.2d 67, 81 (2007). See, Neb. Ct. R. § 4-203(E) (rev. 2011) (deviations from guidelines are permissible "whenever the application of the guidelines in an individual case would be unjust or inappropriate)"; Neb. Ct. R. § 4-213 (Nebraska Child Support Guidelines "intend that spousal support be determined from income available to the parties after child support has been established"). However, a deviation from the limitation may be warranted in cases where the obligor spouse's gross income could support the court's preferred alimony award even if his or taxable income would not. *Gress v. Gress, supra*. In the instant case, although awarding alimony in excess of what would otherwise be allowed under the basic subsistence limitation, the court did not make a specific explanation of why the alimony award was necessary despite its conflict with § 4-203(E). We note that just because the alimony award conflicts with the limit in § 4-203(E) does not necessarily mean that the award is not warranted. *Gress v. Gress, supra*. Thus, we remand the cause to the district court for a determination whether the alimony awarded beyond the limit set forth in § 4-203(E) is warranted.

### 3. SECURITY FOR ALIMONY AND CHILD SUPPORT AWARDS

Keith also contends that the district court erred in ordering him to provide security for the alimony and child support awards.

A court has discretion to require reasonable security for an obligor's current or delinquent support obligations when compelling circumstances require it. *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008). See, Neb. Rev. Stat. § 42-371(7) (Cum. Supp. 2012) ("[t]he court may in any case, upon application or its own motion, after notice and hearing, order a person required to make payments to post sufficient security, bond, or other guarantee with the clerk to insure payment of both current and any delinquent amounts"); § 42-365 (alimony and division of property statute provides that "[r]easonable security for payment may be required by the court)." However, "an order requiring security to be given is a somewhat extraordinary and drastic remedy, and such order should only be invoked when compelling circumstances require it." *Klinginsmith v. Wichmann*, 252 Neb. 889, 898, 567 N.W.2d 172, 178 (1997), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010). See, also, *Lacey v. Lacey*, 215 Neb. 162, 337 N.W.2d 740 (1983). An appellate court reviews an order regarding security for a support obligation de novo on the record for an abuse of discretion. *Davis v. Davis, supra*.

In the instant case, the district court ordered that Keith's child support and alimony obligations were to be secured by a $250,000 life insurance policy with Lori listed as primary beneficiary. Further, the court stated that these obligations were ordered to be secured "in

specific consideration of the physical disability" of Lori. Upon our de novo review of the record, we cannot say that this determination constituted an abuse of discretion.

### 4. FAILURE TO AWARD INTEREST

Lori also assigns as error that the court erred in failing to award interest on the money judgments and alimony awarded in the decree. The court entered judgment against Keith in favor of Lori for alimony and rental payments for the crop year 2013, but failed to include a provision requiring the judgments to bear interest as they come due. We address the interest on alimony award and interest on the rental payment award separately.

### (a) Alimony

Neb. Rev. Stat. § 42-358.02(1) (Cum. Supp. 2012) provides: "All delinquent child support payments, spousal support payments, and medical support payments shall draw interest at the rate specified in section 45-103 in effect on the date of the most recent order or decree. Such interest shall be computed as simple interest." Since interest on spousal support payments is provided for by statute, even though the court's order did not include language concerning interest accruing on any delinquent alimony payments, such interest is a matter of statutory right. See *Laschanzky v. Laschanzky*, 246 Neb. 705, 523 N.W.2d 29 (1994) (interest on delinquent child support payments is matter of statutory right).

### (b) Rental Payments

Lori also argues that the district court erred in failing to award her interest on the judgment awarding her rental payments for the use of tracts 3 and 7 for the 2013 crop year which were ordered to be paid in installments with half of the rental payments "due and owing immediately with the remaining half due and owing on or before December 31, 2013."

Pursuant to Neb. Rev. Stat. § 45-103.01 (Reissue 2010), "Interest as provided in section 45-103 shall accrue on decrees and judgments for the payment of money from the date of entry of judgment until satisfaction of judgment." Neb. Rev. Stat. § 45-103 (Reissue 2010), the statute providing for the interest rate on decrees and judgments for the payment of money, does not require that a marital property distribution payable in installments is entitled to interest running from the date of the entry of judgment; rather, § 45-103 requires that when a judgment is to be paid in installments, interest begins to accrue on each individual installment only from the date it becomes due and payable. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995). However, a district court can exercise its discretion and award interest on deferred installments payable as part of a marital property distribution. *Id.* When exercising its discretionary power, one factor the district court should consider when determining whether a property settlement payable in installments should draw interest from the date of judgment is the burden on the payor-spouse. *Id.*

In the instant case, the judgment awarded to Lori for the 2013 rental was $250 per acre for dry cropland awarded to her and $75 per acre for pasture awarded to her with half due immediately and half due on or before December 31, 2013. In addition to this judgment, Keith was also ordered to pay child support, alimony, and $5,000 of Lori's attorney fees, which had to be paid within 90 days of the filing of the decree. The district court, in exercising its

discretionary power, split the judgment for the 2013 rental of tracts 3 and 7 into two installments, with the second installment due less than 6 months after the filing of the decree. This decision was not error. However, we do note that, pursuant to § 45-103, if Keith was delinquent in either payment, interest would accrue from the date the installment became due and payable.

### 5. DEPENDENCY EXEMPTIONS

Lori contends the district court erred in failing to award her the tax dependency exemptions for the parties' minor children.

A tax dependency exemption is nearly identical in nature to an award of child support or alimony. *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005). The general rule is that a custodial parent is presumptively entitled to the federal tax exemption for a dependent child. *Id.* But, a court may exercise its equitable powers to allocate the exemption to a noncustodial parent. *Id.*

Although the district court did not specifically set forth its reasons for allocating the tax dependency exemptions to Keith, upon our de novo review of the record, it is apparent that Lori has limited income and Keith is paying child support and would receive a greater benefit from the exemptions. Thus, the district court did not abuse its discretion in awarding the tax dependency exemptions to Keith.

### 6. ATTORNEY FEES

Finally, Lori contends that the district court erred in failing to award her sufficient attorney fees. At trial, the district court ordered that each party was responsible for their own fees and costs, with the exception that Keith was to pay $5,000 toward Lori's attorney fees. Lori's counsel submitted an affidavit setting forth his experience, typical hourly fee, customary charges of the bar, type of services performed, length of time required for preparation and presentation of the case, and conservatively estimated that the legal services and associated costs to represent Lori through the trial would be $20,990.66.

The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006). Trial courts and appellate courts are equally regarded as experts at determining the value of legal services. *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013). However, because the trial court is in a better position to evaluate the award of attorney fees, an appellate court interferes only when the award is excessive or insufficient. *Id.*

The record reveals that the parties disagreed on various issues that were litigated at the trial and that the issues litigated were not frivolous or without legal basis. Our de novo review of the record did not reveal an abuse of discretion in the district court's award of $5,000 in attorney fees to Lori.

- 15 -

## VI. CONCLUSION

Having reviewed the assignments of error raised in both Keith's appeal and Lori's cross-appeal, we find error in the alimony award and remand the cause solely on that issue. In all other respects, the decision of the district court is affirmed.

AFFIRMED IN PART, AND IN PART
REMANDED WITH DIRECTIONS.