IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

EISENBROWN V. EISENBROWN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAVID H. EISENBROWN, APPELLANT,

V.

AMY M.P. EISENBROWN, APPELLEE.

Filed March 3, 2020.    No. A-19-436.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Kelly T. Shattuck, of Vacanti Shattuck, for appellant.

Benjamin M. Belmont and Wm. Oliver Jenkins, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

MOORE, Chief Judge.

INTRODUCTION

David H. Eisenbrown appeals from an order of the district court for Douglas County, denying his motion to set aside the divorce decree which dissolved his marriage to Amy M.P. Eisenbrown. For the following reasons, we affirm.

BACKGROUND

David and Amy were married in January 1997. Three children were born during the marriage. On September 1, 2017, the district court entered a decree of dissolution of marriage. Each party was represented by counsel during the proceedings and stipulated to the decree as entered, which decree was prepared by David's attorney.

David had been in the military before the marriage and later became an employee with the Department of Defense Intelligence Agency. The decree assigned Amy "50% of [David's]

- 1 -

Retirement Annuity of the Defense Intelligence Agency's (DIA) Federal Employee Retirement System (FERS) plan together with any cost of living adjustment and early retirement subsidies pursuant to a [qualified domestic relations order] or Court Order Acceptable for Processing (hereinafter COAP)." The decree also provided that any salary adjustments that occur after the date of the divorce decree and before David's date of retirement shall be incorporated into the calculation of Amy's share of David's annuity. No appeal was taken from the decree.

Subsequently, the district court entered a COAP on June 21, 2018. The COAP assigned "an amount equal to 50% of the Marital Portion of [David's] gross monthly annuity . . . determined as of [David's] date of retirement." The COAP provided that for purposes of calculating Amy's share of David's benefit, the marital portion shall be determined by multiplying David's gross monthly annuity by 50 percent. The COAP further provided that any cost of living and salary adjustments that occur after the decree should be incorporated into the calculation of Amy's share of the annuity. No appeal was taken from the COAP.

On August 17, 2018, David, with different counsel, moved to set aside the decree pursuant to the equity powers of the court under Neb. Rev. Stat. § 25-2001(2) (Reissue 2016). Specifically, David sought to amend the portion of the decree regarding the division of his retirement to ensure that the 50 percent awarded to Amy does not award any interest after the September 1, 2017, date of dissolution. David also alleged that the COAP should define the "marital portion" as the annuity divided by 50 percent, accruing during the marriage. David alleged that the COAP, as written, includes future, nonmarital portions of the annuity.

A hearing was held on September 26, 2018. Although the court's order mentioned "further argument" occurring on April 17, 2019, our bill of exceptions does not contain any proceedings from that date. During the September 2018 hearing, David entered into evidence his affidavit, in which he stated that he submitted the current decree and COAP "for review" and was informed that the documents were not drafted correctly, are vague and confusing, and could result in Amy being awarded benefits that are not marital. He stated that he will continue in federal service with the DIA and will not retire until he is 62 years old or 19 years from now. David stated that that the decree and COAP were intended to award Amy 50 percent of the marital portion of his retirement earned up to the date of their divorce on August 31, 2017, and not any nonmarital portions included the expected 19 to 20 years he has remaining before his retirement.

David also presented an affidavit from Kimberly Berry, an attorney who specializes in federal employee retirement issues, detailing her proposed changes to the COAP, which limit Amy's marital share to the years that they were married. Berry premised her suggestions as "consistent with the parties' intent at the time of divorce as expressed in the decree and existing COAP." Lastly, David presented an amended COAP that he believes would correct the errors that he maintains exist within the current COAP. David's attorney argued that it was never David's intent that Amy receive any portion of his benefits earned after the entry of the decree.

Amy's attorney presented Exhibit 4, a written response to David's motion containing communications between him and David's previous attorney regarding the decree and COAP. This exhibit detailed the negotiations regarding the language of the decree and, specifically, the language of paragraph 12(b) concerning David's DIA retirement plan. Paragraph 12(b) in the decree first prepared by David's attorney specified that Amy would be awarded "50% of [David's]

Defense Intelligence Agency (DIA) retirement plan." In response, Amy's attorney proposed revisions to paragraph 12(b), which David's attorney eventually incorporated into the decree that was entered by the court. According to Exhibit 4, subsequent to the entry of the decree and after receiving the COAP, the attorneys communicated regarding the language of the COAP. In an email to Amy's attorney on June 20, 2018, David's attorney indicated he had met with David "regarding the hearing tomorrow" and outlined David's position regarding the COAP. David set forth three unresolved issues regarding the COAP, none of which involved Amy's 50 percent portion of the retirement annuity. Amy's attorney concluded Exhibit 4 by stating that the terms of both the COAP and decree were negotiated and agreed upon, with the only contested issue being the cost of the surviving spouse annuity which was ultimately resolved by the court on or about June 21, 2018, when the court entered the COAP.

An order denying David's motion to set aside was entered on May 6, 2019. David now appeals.

## ASSIGNMENTS OF ERROR

David assigns the district court erred by approving the COAP that was not approved by both parties, was inconsistent with the terms of the decree, and would result in gross inequities if not corrected. Further, David assigns that the district court erred when it denied his motion to set aside portions of the decree and the COAP and to replace the language to clearly award Amy only the marital half of his retirement benefits.

## STANDARD OF REVIEW

An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion. *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015).

## ANALYSIS

*COAP Approval.*

David first assigns that the district court erred by approving the COAP, claiming that it was not approved by both parties.

Initially, in connection with David's argument that he did not approve the COAP prior to its entry, we note that David did not allege in his motion to set aside the decree or argue at the hearing on his motion that the COAP was entered without his approval. The record shows that Amy filed a motion to enter COAP on January 26, 2018, asserting that David had "failed, refused and/or neglected" to approve it. An amended notice of hearing set the motion for April 17; however, the record shows that the hearing was not held until June 21. The bill of exceptions does not contain any proceedings from that day. Therefore, we do not know what occurred at the hearing and whether David objected to the COAP language he challenges in this appeal.

The COAP was entered by the court on June 21, 2018. No appeal was taken within 30 days of the entry of the COAP. Thus, David has not preserved any error in connection with the court's entry of the COAP allegedly without his approval. Rather, David filed the motion to set aside the

decree on August 17. Therefore, we will analyze David's assigned errors in the context of the district court's denial of his motion to set aside the decree.

*Denial of Motion to Set Aside Decree.*

David's motion to set aside the decree was brought under § 2-2001(2), which recognizes the power of a district court under its equity jurisdiction to set aside a judgment. David's motion alleges that both the decree and the COAP should be set aside in order to avoid "unintended and inequitable results" if the language is not corrected.

A decree dissolving a marriage becomes final and operative 30 days after the decree is entered. Neb. Rev. Stat. § 42-372.01 (Reissue 2016). It is well settled that once a decree for dissolution becomes final, its meaning is determined as a matter of law from the four corners of the decree itself. *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008). Where the terms of a final decree are unambiguous, a qualified domestic relations order (QDRO) enforcing that decree must dispose of assets in the manner required by the decree. *Id.* In *Blaine*, the wife appealed from an order finding that the husband had purged himself of contempt by the filing of two QDRO's, and the Supreme Court analyzed whether the QDRO's were consistent with the terms of the decree. The court concluded that they were not and remanded the matter to the district court.

Under the plain language of the stipulated divorce decree in this case, as prepared by David's attorney, Amy was assigned 50 percent of David's retirement annuity, to include cost-of-living and salary adjustments that occur after the date of the divorce decree and before David's retirement. The decree did not contain any reference to the "marital portion" of David's annuity or otherwise limit Amy's award to only the portion of the annuity accrued during the marriage. Further, the inclusion of future earnings after entry of the decree in the calculation of Amy's share of the retirement benefits supports the conclusion that Amy's share was not limited to that earned during the marriage. David admits in his brief on appeal that the language of the decree assigns Amy 50 percent of his retirement annuity without specifically delineating a marital portion.

Despite the plain language of the decree, David nevertheless argues that he did not intend to give up his future nonmarital retirement benefits. David relies upon *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015), for the proposition that only the portion of retirement accounts earned during the marriage are to be included in the marital estate. However, in *Coufal*, the division of the marital estate was a contested matter, which differs from this case where the parties agreed on the division of David's annuity through a negotiated agreement where both parties were represented by counsel. The evidence presented at the hearing on the motion to set aside the decree, specifically the decree as initially prepared by David's attorney and communications between counsel, shows that David did not express an intent to limit Amy's portion to only that earned during the marriage. Therefore, because David agreed to the division of the annuity as set forth in the decree, the court's denial of the motion to set aside the decree on the basis that it was not consistent with David's intent was not an abuse of discretion.

Next, David argues that the COAP entered by the court was inconsistent with the decree.

A similar argument was addressed in the case of *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998). There, the parties were divorced pursuant to a divorce decree providing that

the wife "'should receive one-fourth of any payments received from the [husband's] pension and retirement plan by [the husband] at the time such payments are received.'" *Id.* at 745, 580 N.W.2d at 518. Several years later, the district court granted the wife's request to enter a QDRO consistent with the decree, distributing one-fourth of the pension, without offsetting post-decree accumulations to the pension. On appeal, the Nebraska Supreme Court affirmed the court's entry of the QDRO, reasoning that

> because the plain language of the parties' settlement agreement refer to the husband's pension plan, without limiting that term to pension benefits earned during the marriage, we conclude that the trial court was correct in finding that the parties intended that the wife would be entitled to the pension benefits that were earned by the husband both during the parties' marriage and after dissolution.

*Id*. at 752, 580 N.W.2d at 522.

In the present case, the COAP referred to the "marital portion" of David's annuity, which language was admittedly not contained in the decree. However, this language is not inconsistent with the decree, because the COAP goes on to state that the marital portion is determined as of the date of David's retirement. This determination is consistent with the decree as, similar to *Hoshor*, there was no limitation in the decree to the portion of the annuity earned during the marriage. Further, the COAP contains the same cost-of-living and salary adjustment provisions contained in the decree. Because the COAP provides for the division of the annuity in the manner required by the decree, the district court did not abuse its discretion in denying David's motion to set aside the decree or the COAP on the basis that the COAP was inconsistent with the decree.

Finally, David argues that if the decree and COAP are not corrected, the division of his retirement annuity would result in gross inequities. He asserts that it is possible that he may work for another 19 years and that his current wife, not Amy, should be entitled to share in the annuity benefits that accrue during this time.

Where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, provisions dealing with division of pension benefits will not thereafter be vacated or modified in the absence of fraud or gross inequity. *Schwartz v. Schwartz*, 275 Neb. 492, 747 N.W. 2d 400 (2008). In *Schwartz*, the parties executed a property settlement agreement that was incorporated into a decree entered in 1999. The agreement provided for the division of the husband's military retirement account by a QDRO which would award the wife 43 percent of the value of the plan. The parties further agreed that in exchange for setting aside less than 50 percent of the plan to the wife, she would be the beneficiary of the husband's survivor benefit plan (SBP). In 2005, the former wife filed a motion to determine the parties' rights and interests to the military retirement benefits, seeking modification of the QDRO because she could not be named the beneficiary of the SBP. The Supreme Court, in affirming the district court's modification of the QDRO, found that the failure to modify the decree would result in gross inequity because the inability to designate the former wife as the beneficiary of the SBP materially altered the parties' agreement.

Similarly, in *Gruber v. Gruber*, 261 Neb. 914, 626 N.W.2d 582 (2001), the Supreme Court affirmed the district court's modification of the division of pension benefits on the basis of gross inequity upon an application by the former wife to modify. In that case, the former husband's employer refused to recognize a QDRO pertaining to his pension. The Supreme Court found that because neither party could reasonably have contemplated the employer's refusal to recognize a QDRO, the district court did not abuse its discretion in finding that gross inequity would result in the absence of modification of the decree that would allow the employer to recognize the QDRO.

In the case at hand, we conclude that there is no gross inequity resulting from the district court's failure to set aside the decree or modify the COAP. As we found above, the COAP is consistent with the provisions of the parties' stipulated decree, which we have determined plainly provides for Amy to receive 50 percent of David's retirement annuity, without limitation to that portion earned during the marriage. Despite David's argument that this was not his intent, he clearly agreed to the provisions of the agreement and decree. The district court did not abuse its discretion in denying David's motion to set aside the decree.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in denying David's motion to set aside the divorce decree.

AFFIRMED.